MARK V. HARTMAN, Plaintiff v. W.H. ODELL AND ASSOCIATES, INC., Defendant

No. 9422SC83

(Filed 20 December 1994)

**Labor and Employment § 85 (NCI4th)— covenant not to compete overly broad—agreement not saved by "blue penciling"**

A covenant not to compete which attempted to forbid plaintiff from working in every city, whether defendant did business there, in eight states for five or more years was overly broad and could not be saved by "blue penciling" the agreement.

**Am Jur 2d, Master and Servant §§ 23, 106, 107.**

**Enforceability of restrictive covenant, ancillary to employment contract, as affected by duration of restriction. 41 ALR2d 15.**

**Enforceability of restrictive covenant, ancillary to employment contract, as affected by territorial extent of restriction. 43 ALR2d 94.**

Appeal by defendant from judgment entered 4 August 1993 by Judge James A. Beatty, Jr. in Davidson County Superior Court. Heard in the Court of Appeals 3 October 1994.

*Womble, Carlyle, Sandridge & Rice, by Thomas D. Schroeder and David A. Shirlen, for plaintiff-appellee.*

*House & Blanco, P.A., by John S. Harrison and Peter J. Juran, for defendant-appellant.*

THOMPSON, Judge.

The issue presented by this appeal is whether or not the defendant can enforce a covenant not to compete contained in two successive employment agreements signed by the plaintiff. We hold the covenant not to compete is overly broad and cannot be saved by "blue penciling" the agreement. Therefore, we affirm.

The plaintiff was an employee of the defendant from 1986 to 1991. In 1987 and again in 1989, the plaintiff signed employment agreements containing covenants not to compete.

After plaintiff's resignation in 1991, defendant, through its attorneys, wrote numerous letters to plaintiff concerning the covenants. Plaintiff filed this action in Davidson County Superior Court on 4 March 1992.

The case was called for trial before the Honorable James A. Beaty, Jr. during the 29 March 1993 civil session of Davidson County Superior Court. Pursuant to defendant's motion and by agreement of the parties, the trial court held a bifurcated trial. In the first portion of the trial, a bench trial was held for the purpose of interpreting the contract and determining the enforceability of the covenant not to compete. The trial court held that: (1) the restrictive covenant survived termination of employment; (2) the covenant protected a legitimate interest of the defendant; (3) portions of the covenant were overly broad as to the nature of the restricted activity; (4) portions of the covenant were overly broad as to one of the time periods; and (5) portions of the geographic restriction were unreasonable. The trial court "blue penciled" Article 13(a) and directed that a written statement of its holding as to the enforceable provisions of Article 13(a) of the covenant not to compete be prepared and read to the jury at the subsequent jury trial.

The original covenant reads in part as follows:

ARTICLE 13. COVENANTS AGAINST COMPETITION

(a) Employee agrees that during his term as an employee of the Corporation and for five (5) years thereafter, he will not, either directly or indirectly, on his own account, or in the service of others, own, manage, lease, control, operate, participate, consult or assist any person or entity providing actuarial services or any other services of the same nature as the services currently offered by the Corporation to the insurance industry and others or otherwise compete against the Corporation in the actuarial or consulting business. This covenant shall be binding upon employee within the geographic territory of North Carolina, South Carolina and Georgia (the "Primary Territory") and those five (5) states, not including the Primary Territory, from which the Corporation has derived the greatest revenues during the twenty-four (24) month period preceding the termination of the Employee's employment, which five (5) states, along with the Primary Territory, shall constitute the "Restricted Territory." Notwithstanding the foregoing, if Employee ceases to be employed by the Corporation, he shall have the right to work as a

full-time employee of an insurance company so long as he renders services only for the exclusive benefit of such company.

(b) Employee shall have the right to render actuarial or consulting services to the insurance industry outside of the Restricted Territory; however, he covenants and agrees that if he does render such services outside of the Restricted Territory to any Client (as hereinafter defined) of the Corporation, he shall pay to the Corporation an amount equal to forty percent (40%) of the aggregate fees paid to him or his affiliates by a client during the first three (3) years after the termination of his employment with the Corporation and thirty percent (30%) of the aggregate fees paid to him or his affiliates by a Client during the next two (2) years. For purposes of this agreement, a "Client" shall mean any person, firm, or corporation in the insurance industry for which the Corporation has provided actuarial or consulting services at any time during the twenty-four (24) month period preceding termination of Employee's employment or any person, firm, or corporation with which the Corporation was engaged in discussions at the time of the termination of Employee's employment or within six (6) months prior thereto about the rendering of actuarial or consulting services by the Corporation to such person, firm or corporation. The percentage payment due to the Corporation shall be payable to it within ten (10) days after receipt of any payment by Employee or his affiliates. Further, Employee shall render an annual accounting to the Corporation identifying all Clients served by him or his affiliates during the previous year and the gross fees charged to and paid by such clients to him or his affiliates. To the extent that Employee fails or refuses to make any payment hereunder or provide any accounting, the Corporation shall have the right to seek immediate injunctive relief prohibiting Employee or his affiliates from rendering in the future actuarial or consulting services to any Client, as well as the recovery of all sums thereunder.

(c) Employee further agrees that during such time and within the above-described Restricted Territory he will not induce any client of the Corporation to patronize any other actuarial or consulting business similar to the business of the Corporation, nor will he request or advise any Client of the Corporation to withdraw, curtail or cancel such Client's business with the Corporation.

Paragraph (a) of the "blue penciled" or modified covenant submitted to the jury read as follows:

HARTMAN v. ODELL AND ASSOC., INC.

[117 N.C. App. 307 (1994)]

(a) Employee agrees that during his term as an employee of the Corporation and for five (5) years thereafter, he will not, either directly or indirectly, on his own account, or in the service of others, own, manage, lease, control, operate, participate, consult or assist any person or entity providing actuarial services or any other services of the same nature as the services currently offered by the Corporation to the insurance industry and others [or otherwise compete] {in competition} against the Corporation in the actuarial or consulting business. This covenant shall be binding upon Employee within the geographic territory of North Carolina, South Carolina and Georgia [(the "Primary Territory") and those five (5) states, not including the Primary Territory, from which the Corporation has derived the greatest revenues during the twenty-four (24) month period preceding the termination of the Employee's employment, which five (5) states, along with the Primary Territory, shall constitute the "Restricted Territory].["] Notwithstanding the foregoing, if Employee ceases to be employed by the Corporation, he shall have the right to work as a full-time employee of an insurance company so long as he renders services only for the exclusive benefit of such company.

With these modifications to the covenants in effect, the trial court conducted a jury trial on the issues of whether the plaintiff breached the modified Article 13(a) and whether damages resulted from any such breach. The court chose not to submit issues to the jury concerning the breach of Articles 13(b) and 13(c), and defendant did not challenge that decision. The jury found a breach of the modified Article 13(a) and awarded damages of $42,380.00. The court enjoined the plaintiff from engaging in conduct in violation of the modified covenant.

The plaintiff then filed motions for judgment notwithstanding the verdict, judgment for plaintiff, relief from the verdict, and a new trial. In an extensive order dated 17 May 1993 the trial court acknowledged that the covenants were overly broad, recognized that it should not have rewritten the covenants, granted judgment in favor of the plaintiff, and stated the following:

The Court therefore concludes as a matter of law that the covenant not to compete contained in the employment agreement between the plaintiff and the defendant is unenforceable and therefore void.

**HARTMAN v. ODELL AND ASSOC., INC.**

[117 N.C. App. 307 (1994)]

After the court granted judgment for the plaintiff, the defendant moved for modification or reconsideration of that decision. The defendant specifically argued that the trial court had not addressed the covenants in Articles 13(b) and 13(c). The plaintiff opposed the motion, specifically arguing that the language of the judgment clearly invalidated the entire "covenant not to compete contained in the employment agreement." The trial court denied the defendant's motion, and the defendant appealed.

On appeal the defendant contends that the covenant not to compete is not overly broad and is enforceable as written; and if the covenant not to compete is overly broad, it can be saved by "blue penciling." We disagree.

A covenant in an employment agreement providing that an employee will not compete with his former employer is "not viewed favorably in modern law." *Safety Equipment Sales & Service, Inc. v. Williams*, 22 N.C. App. 410, 414, 206 S.E.2d 745, 749 (1974). To be enforceable a covenant not to compete must be:

> (1) in writing; (2) reasonable as to time and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) designed to protect a legitimate business interest of the employer (citations omitted).

*Young v. Mastrom, Inc.*, 99 N.C. App. 120, 122-123, 392 S.E.2d 446, 448, disc. *review denied*, 327 N.C. 488, 397 S.E.2d 239 (1990). "The reasonableness of a noncompetition covenant is a matter of law for the court to decide." *Beasley v. Banks*, 90 N.C. App. 458, 460, 368 S.E.2d 885, 886 (1988) (citations omitted).

The party who seeks the enforcement of the covenant not to compete has the burden of proving that the covenant is reasonable. *E.g. Kadis v. Britt*, 224 N.C. 154, 158, 29 S.E.2d 543, 545 (1944); *Harwell Enterprise, Inc. v. Heim*, 6 N.C. App. 548, 552, 170 S.E.2d 540, 543 (1969), *aff'd in part and rev'd in part*, 276 N.C. 475, 173 S.E.2d 316 (1970).

To carry its burden defendant must prove that the covenant not to compete is reasonable as to both time and territory. In evaluating reasonableness, the time and territory restrictions must be read in tandem:

> Although a valid covenant not to compete must be reasonable as to both time and area, these two requirements are not independ-

ent and unrelated aspects of the restraint. Each must be considered in determining the reasonableness of the other.

*Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 665, 158 S.E.2d 840, 844 (1968); *Triangle Leasing Co. v. McMahon*, 96 N.C. App. 140, 149, 385 S.E.2d 360, 365 (1989), *aff'd in part and rev'd in part*, 327 N.C. 224, 393 S.E.2d 854 (1990). At trial the defendant failed to meet its burden of proof, and the trial court correctly concluded that the covenants are unenforceable.

I. ENFORCEABILITY OF THE COVENANTS

A. REASONABLENESS AS TO TERRITORY

One of the primary purposes of a covenant not to compete is to protect the relationship between an employer and its customers. *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 408, 302 S.E.2d 754, 763 (1983). Accordingly, to prove that a geographic restriction in a covenant not to compete is reasonable, an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships.

> A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in *maintaining* [its] customers.

*Manpower of Guilford County, Inc. v. Hedgecock*, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979) (emphasis added). The employer must show that the territory embraced by the covenant is no greater than necessary to secure the protection of its business or good will. *A.E.P.*, 308 N.C. at 408, 302 S.E.2d at 763. If the territory is too broad, "the entire covenant fails since equity will neither enforce nor reform an overreaching and unreasonable covenant." *Beasley*, 90 N.C. App. at 460, 368 S.E.2d at 886. In deciding what is "reasonable," the court in *Clyde Rudd & Associates, Inc. v. Taylor*, 29 N.C. App. 679, 684, 225 S.E.2d 602, 605 (1976), *cert. denied*, 290 N.C. 659, 228 S.E.2d 451 (1976), listed six factors relevant to determining whether the geographic scope of a covenant not to compete is reasonable:

> (1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

Where the alleged primary concern is the employee's knowledge of the customers, "the territory should only be limited to areas in which the employee made contacts during the period of his employment." *Manpower*, 42 N.C. App. at 522, 257 S.E.2d at 114-115.

With respect to the covenants in Articles 13(a) and 13(c), defendant failed to show where its customers were located. Bill Odell, a shareholder and president of defendant firm, attempted to support the covenants by testifying "the business is nationwide in scope. We have done client work from New Hampshire to California, from Ohio down to Texas." Defendant relies on this testimony to support the geographic scope of the covenants. Mr. Odell's testimony is, at best, an "indefinite generality" that is insufficient to support a covenant not to compete. *Beasley*, 90 N.C. App. at 461, 368 S.E.2d at 887.

Moreover, defendant's trial Exhibit 11 belies Mr. Odell's statement. Exhibit 11 lists, for the two years prior to plaintiff's resignation, the following: (1) the total (lump sum) revenue defendant received from undisclosed locations in the territory comprised of North Carolina, South Carolina and Georgia (called the "Primary Territory" in the covenants); (2) the revenue defendant received individually from undisclosed location(s) in Indiana, Kentucky, Texas, Louisiana, and Pennsylvania (in combination with the Primary Territory called the "Restricted Territory" in the covenants); and (3) the revenue defendant received from all other states. Exhibit 11 reveals that there are 36 states from which defendant received no revenue whatsoever during the two years prior to the plaintiff's resignation, thus refuting the contention that defendant's business is "nationwide."

With respect to the "Primary Territory," Exhibit 11 states only aggregate gross revenues from those states as a group. Defendant fails to provide any breakdown of the revenues obtained within any state. In response to questions from the trial court, Mr. Odell could not testify concerning the revenues derived from any of the three states and could not even state whether South Carolina or Georgia ranked among the top three revenue-producing states for defendant in the two years preceding plaintiff's resignation.

With respect to some states there was no evidence whatsoever as to how many clients defendant had in each state. In the case of those states as to which there was any such evidence, the evidence failed to support a statewide covenant. Mr. Odell testified that he had a number of clients in Indiana. "[It] may have been one or it may have been two or three. It was not a large number." Mr. Odell further testified

that the number of clients in Texas "would be three, four or five." Two or three clients in Indiana or Texas does not justify a covenant covering those entire states, particularly where the covenant runs for such a lengthy period of time. *Cf. Harwell Enterprises, Inc. v. Heim*, 276 N.C. 475, 481, 173 S.E.2d 316, 320 (1970). Finally, there was very little specific evidence concerning the location of the clients for whom plaintiff worked or with whom he was in contact. In short, we find that the defendant failed to justify the broad geographic scope of the covenants.

The evidence presented at trial by the defendant also indicated that the geographic scope of the covenants in Article 13(a) and 13(c) was unreasonable in view of the size of defendant's business. As of 30 January 1989, the date of the 1989 covenant, the defendant employed between six and eight persons. It had only one office, located in Winston-Salem, North Carolina. Consistent with its size, defendant worked for a very small number of clients, typically twenty to twenty-five each year. In view of this evidence, the trial court correctly concluded that the covenants were unreasonable in that they attempted to forbid plaintiff from working in every city (whether or not defendant did business there) in eight states for five or more years.

No evidence was presented at trial to prove that the worldwide covenant in Article 13(b) was reasonable. Under that covenant, if a national insurer had engaged defendant to perform some modest assignment for it in Winston-Salem, plaintiff would have been required to pay defendant 30% to 40% of all fees he collected from that insurer for work he did for any office of that insurer *in any part of the world*. Bill Odell acknowledged that some of defendant's clients have other offices in states in which he does no business. Moreover, Article 13(b) defines "clients" as including persons whom defendant was "engaged in discussions with" at the time plaintiff left the defendant's employ or six months prior thereto, but who may never actually have become clients. Clearly, there is no evidence to support any such scope for this restriction.

B. REASONABLENESS AS TO TIME PERIODS

Although plaintiff's covenants are ostensibly for five years, the time period of the covenants is considerably extended by Article 13(d). Article 13 (d) provides:

> In the event it becomes necessary for the Corporation to enforce any covenant contained in this paragraph, the five (5)-year time

period specified above shall be measured from the date of entry by a court of competent jurisdiction of a final judgment enforcing such covenant.

This is not a tolling provision for the duration of the litigation. *See Manpower of Guilford County, Inc. v. Hedgecock*, 42 N.C. App. 515, 522, 257 S.E.2d 109, 115 (1979). Rather, Article 13(d) purports to start the full five-year period anew after judgment. The covenant as written has the potential to last for more than ten years and is patently unreasonable.

Even if the covenants were read to encompass only a five-year period, we hold that any such lengthy period is unreasonable on these facts.

The North Carolina Supreme Court has stated that only "extreme conditions" will support a five-year covenant: "It may be held that in some instances and *under extreme conditions* five years would be held to not be unreasonable." *Engineering Associates, Inc. v. Pankow*, 268 N.C. 137, 139, 150 S.E.2d 56, 58 (1966) (emphasis added). No "extreme circumstances" exist in this case. In response to a question concerning why the covenants run for five years, Mr. Odell replied that some clients do not send any business for several years and then decide to do so again. Testimony that a client may send business one year and then five years later does not support a five-year covenant any more than testimony that a client may send business in one year and then ninety-nine years later would support a ninety-nine year covenant. We hold that five years is particularly excessive in view of the broad territory covered and the small number of clients whom defendant would have to contact in order to safeguard its business from plaintiff's proselytizing efforts. *Jewel Box Stores*, 272 N.C. at 665, 158 S.E.2d at 844 ("a longer period of time is justified where the area in which the competition is prohibited is relatively small.") For example, in *Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 120 S.E.2d 739 (1961), the court upheld a five-year covenant, where the restricted territory was only one city. In contrast, the covenants not to compete in Articles 13(a) and 13(c) cover eight states, and the covenant in Article 13(b) covers the entire world. In *Masterclean of North Carolina, Inc. v. Guy*, 82 N.C. App. 45, 50, 345 S.E.2d 692, 696 (1986), this Court found a five-year covenant purporting to cover any county in the United States where the employer worked "patently unreasonable."

HARTMAN v. ODELL AND ASSOC., INC.

[117 N.C. App. 307 (1994)]

C. Legitimate Business Interest

A covenant "must be no wider in scope than is necessary to protect the business of the employer." *Manpower of Guilford County*, 42 N.C. App. at 521, 257 S.E.2d at 114. "If a contract by an employee in restraint of competition is too broad to be a reasonable protection to the employer's business it will not be enforced." *Whittaker General Medical Corp. v. Daniel*, 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989).

In its argument to this Court, defendant focused on the job description of the plaintiff as it related to dealing with clients, contending that because of the nature of the services provided by defendant, geographic proximity to clients is not so important as is the continuing long-term relationships with clients. Defendant argued that the noncompetition clause in question is reasonably necessary to protect its interest because of the compensation and training it provided the plaintiff.

Plaintiff, on the other hand, contends that *Electrical South, Inc. v. Lewis*, 96 N.C. App. 160, 385 S.E.2d 352 (1989), *disc. review denied*, 326 N.C. 595, 393 S.E.2d 876 (1990) is dispositive of this aspect of the case. In *Electrical South*, the employer prepared a covenant which provided that the employee could not "own, manage, operate, be employed by, participate in, or be connected in any manner with" any business which manufactures, designs, repairs or services industrial solid state electronic equipment "or which competes, directly or indirectly, with the company in such endeavors" within a radius of 200 miles. Reading this provision, the court found that the covenant, among other things, prevented the employee from working anywhere in the world with any business that competed with the employer in a 200-mile radius. The court indicated that the covenant was fatally defective because it focused on "[e]mployee's association with another company, wherever located, which may be linked with the company's competitors within the 200-mile circle by any slender thread" instead of on the "employee's competition for the Company's customers in the 200-mile" area. The court pointed out that the employer's " 'shotgun' approach to drafting this provision produces oppressive results" and held the covenant invalid. *Electrical South, Inc. v. Lewis*, 96 N.C. App. at 168, 385 S.E.2d at 357.

In language which mirrors that of *Electrical South*, defendant's covenant is much broader than necessary to protect its legitimate business interest. Article 13(a) purports to preclude the plaintiff from working with any actuarial business in North Carolina (or seven other

**HARTMAN v. ODELL AND ASSOC., INC.**

[117 N.C. App. 307 (1994)]

states), even if the business by which he was engaged did not service any customers located in the eight states. Like the *Electrical South* covenant, the covenant was not limited so as to prevent plaintiff's "competition for [defendant's] customers" only in the applicable territory.

Article 13(a) is also overly broad in that, by using the phrase "or competes," it (like the *Electrical South* covenant) can be read to prohibit plaintiff from working for any business that provides actuarial services, without reference to whether or not that business competes with defendant. The trial court recognized this defect and attempted at first to cure the defect by rewriting the covenant.

Article 13(a) is also overly broad in that, rather than attempting to prevent plaintiff from competing for actuarial business, it requires plaintiff to have no association whatsoever with any business that provides actuarial services. Article 13(a) provides that plaintiff may not "own, manage, lease, control, operate, participate, consult or assist" any "entity" that provides "actuarial services." Such a covenant would appear to prevent plaintiff from working as a custodian for any "entity" which provides "actuarial services."

Similarly Article 13(b) protects no legitimate business interest of defendant. As previously discussed, if a national insurer currently provides work to defendant in this part of the country, plaintiff would have to pay defendant 30% to 40% of any fees it earned from that insurer for work done in any part of the world. No legitimate business interest supports any such world-wide restriction on competition. *Electrical South, Inc. v. Lewis*, 96 N.C. App. 160, 385 S.E.2d 352 (1989), disc. *review denied*, 326 N.C. 595, 393 S.E.2d 876 (1990).

II. APPLICATION OF THE "BLUE PENCILING" DOCTRINE

When the language of a covenant not to compete is overly broad, North Carolina's "blue pencil" rule severely limits what the court may do to alter the covenant. A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant.

The courts will not rewrite a contract if it is too broad but will simply not enforce it (citations omitted). If the contract is separable, however, and one part is reasonable, the courts will enforce the reasonable provision (citations omitted).

*Whittaker,* 324 N.C. at 528, 379 S.E.2d at 828. In this case, the trial court correctly overturned the jury verdict and ruled that the covenants could not be saved by "blue penciling." Moreover, even if we were to undertake to "blue pencil" the covenants, they would remain too overly broad to be enforced.

III. RESALE OF PLAINTIFF'S STOCK TO DEFENDANT

Finally, we reject the defendant's argument that plaintiff's covenant involves the sale of a business rather than an employer-employee relationship and is therefore subject to a more relaxed standard. While it is true that a buy-sell agreement required plaintiff to resell his shares of stock to his employer, it is clear that this covenant not to compete was executed ancillary to an employment agreement and therefore the more stringent test applies.

The covenant not to compete is void, and we affirm the decision of the trial court.

Affirmed.

Judges JOHNSON and MARTIN concur.