UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1651

TECHNOLOGY PARTNERS, INCORPORATED,

Plaintiff – Appellant,

v.

BRIAN HART,

Defendant – Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Senior District Judge. (3:08-cv-00208-GCM)

Argued: September 23, 2008            Decided: November 4, 2008

Before TRAXLER, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Traxler and Judge King joined.

**ARGUED:** Pamela Suzanne Duffy, WISHART, NORRIS, HENNINGER & PITTMAN, P.A., Burlington, North Carolina, for Appellant. Virginia Whitner Hoptman, WOMBLE, CARLYLE, SANDRIDGE & RICE, Tysons Corner, Virginia, for Appellee. **ON BRIEF:** Molly A. Orndorff, WISHART, NORRIS, HENNINGER & PITTMAN, P.A., Burlington, North Carolina, for Appellant. Kurt E. Lindquist II, WOMBLE, CARLYLE, SANDRIDGE & RICE, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Technology Partners, Inc. appeals from the district court's refusal to issue a preliminary injunction to prevent its former employee, Brian Hart, from working for its competitor, AMICAS. TPI claims that such employment would breach Hart's covenants not to compete and result in a misappropriation of its trade secrets. Finding no abuse of discretion in the district court's denial of the motion for a preliminary injunction, we affirm.

I.

Technology Partners, Inc. ("TPI") is a software development company that develops building and financial management software for healthcare providers generally and radiology in particular. TPI's flagship product is called IMAGINEradiology (the "Software").

In 2003, Hart was hired out of college by TPI as an hourly-wage programmer. Hart worked his way up through the ranks at TPI and its subsidiaries. In January 2008, Hart accepted a position at TPI as Vice President of Product Management. At that time, he signed a new employment agreement ("2008 Agreement"), which included covenants not to compete in paragraphs 8 and 13. For a one-year period following termination, these covenants precluded Hart from accepting employment at a "Conflicting Organization" or "any firm or

2

corporation engaged in a venture or business substantially similar to" that of TPI. J.A. 39-41. The covenants also included a geographical restriction preventing Hart from accepting employment with a competitor in geographical areas in which TPI had done business or was doing business as of the date of Hart's termination.

Hart's job responsibilities at TPI gave him complete administrative level access to all computer systems, server records and databases. He was directly and intimately involved in the development of TPI's new products. He had thorough knowledge of TPI's technology, as well as access to TPI's client list and confidential financial and business information.

In late 2006 and early 2007, AMICAS, a provider of radiology software, entered into negotiations to purchase TPI. During the due diligence phase of AMICAS' investigation of TPI, AMICAS became familiar with the financial, business, and operational underpinnings of TPI, including its books and records, customers and business goals. Although TPI and AMICAS did not come to terms regarding the acquisition of TPI itself, TPI did agree to sell AMICAS rights, title and interest (including all inventions, intellectual property and trademarks) in the Software for $2.3 million. Through an Asset Purchase Agreement ("APA") AMICAS became co-owner of the Software with TPI. The APA provided that TPI was to furnish training and

3

education services for the Software, customer installation instruction and "current information and documentation about bug issues, product roadmap and existing development plans." J.A. 131, 267; Appellee Br. at 6.

From April through September 2007, Hart was assigned by TPI to oversee the installation of the Software at AMICAS, as well as to conduct concurrent training in the use of the Software. In February or March 2008, Hart was contacted by a recruiter and subsequently entered into employment discussions with AMICAS. Hart gave written notice of resignation to TPI on March 19, 2008, stating that his last day at TPI would be April 4, 2008. Because of some last-minute employment negotiations with TPI (concerning whether TPI would match or surpass AMICAS' offer), Hart actually resigned from TPI on April 8, 2008.

Approximately three weeks later, on April 28, 2008, TPI filed a motion for a preliminary injunction to prevent Hart from working for AMICAS. TPI claimed that Hart's employment with AMICAS would both breach his covenants not to compete and result in a misappropriation of its trade secrets. On May 6, 2008, Hart removed the case to federal court on the basis of diversity because Hart is a citizen and resident of South Carolina while TPI is a corporation organized in, and principally operating in, North Carolina. On May 21, 2008, the district court denied TPI's motion for a preliminary injunction. TPI timely appealed.

4

II.

This court reviews the grant or denial of a preliminary injunction for abuse of discretion, "recognizing that preliminary injunctions are extraordinary remedies . . . to be granted only sparingly and in limited circumstances." Micro Strategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (citations omitted). A court abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon clearly erroneous factual findings. Westberry v. Gislaved Gummi A.B., 178 F.3d 257, 261 (4th Cir. 1999). Under the abuse of discretion standard, this court may not substitute its judgment for that of the district court, "rather, we must determine whether the court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995).

The grant or denial of a preliminary injunction is governed by the so-called Blackwelder analysis, which has three steps. Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977). First, the court must "balance the 'likelihood' of irreparable harm to the plaintiff [if the injunction is denied] against the 'likelihood' of harm to the defendant [if the injunction is granted]." Id. at 195. Second, the court must determine whether the plaintiff is likely to succeed on the merits. Id. at 196. However, if the balance

5

in the first step is struck in favor of the plaintiff and there are grave or serious questions presented, the plaintiff need not also show likely success on the merits. Id. The importance of showing likelihood of success increases as the probability of irreparable harm diminishes. Id. at 195. The third step of the analysis is the court's determination of where the "public interest" lies with regard to the grant or denial of the preliminary injunction. Id. at 196-97. Blackwelder also teaches that the steps of the analysis are intertwined and each can affect the other. Id. at 196.

A. Covenants not to compete

In its determination of whether to grant a preliminary injunction on the basis of TPI's claim of breach of the covenants not to compete, the district court began its analysis with the first Blackwelder step, balancing the potential harm to TPI against the potential harm to Hart. After considering live argument by the parties, the APA, and the submitted affidavits,[1]

---

[1]These affidavits included an affidavit by Charles Kauffman, which detailed the specific technology that pre-dated or post-dated the March 2007 APA. J.A. 351-56. TPI, in live argument before the district court, proffered Kauffman as a witness on this issue. The district court declined to hear Kauffman's testimony, apparently relying instead on his affidavit. TPI asserts this was an error. See, e.g., Reply Br. at 5-7. TPI, subsequent to the live argument, submitted a second affidavit by Kaufman on this issue. J.A. 364-67. Because the record shows (Continued)

6

the court found that the harm to TPI if the injunction was denied (thereby allowing Hart work for AMICAS) was mitigated because "there's a significant possibility that Technology Partners was required by the terms of [the APA] to transfer substantial chunks of what they now claim are trade secrets over to somebody that paid them . . . Certainly enough of the stuff that they were required to transfer and the training they were required to do would clearly have suggested a lot of the issues that they now say are trade secrets." J.A. 199. In other words, according to the district court, TPI's earlier decision to sell the source code to the Software to AMICAS, and to continue to service the Software, significantly undermined its current claim that the denial of a preliminary injunction would irreparably harm TPI. As to Hart, the district court found that the harm to him if the injunction was granted was readily ascertainable, consisting of loss of his increased compensation at AMICAS[2] and the covenants' requirement to stay outside the market for a "fairly extended period of time." J.A. 199. The

---

that the district court had a reasonable basis for declining to hear Kaufman's live testimony (i.e., Kaufman's affidavit on the issue was already in the court's possession), the court did not abuse its discretion in this regard.

[2]Hart's job with AMICAS represented a 67% pay raise ($150,000 versus $90,000) with added incentive bonuses of $90,000. It was unlikely to be matched by any alternative offer. J.A. 183; J.A. 199.

7

district court ultimately concluded that the balance of harms did not decidedly tip in favor of either of the parties.

TPI maintains that the district court erred in not finding that the harm to TPI outweighed the harm to Hart. TPI asserts that the harm it would suffer flowed from the fact of Hart's significant exposure to both its clients and its confidential development activities. TPI describes the loss to Hart as a fairly minimal restriction of his employment opportunities.

Both characterizations miss the mark. The district court appropriately recognized and weighed both competing harms. As to the harm to TPI, the record reflected a strong possibility that AMICAS had already learned much of the information at issue independently of Hart, either through its due diligence during earlier negotiations with TPI or through the APA. Although TPI contended at oral argument that the district court's recognition that not all valuable information had been passed to AMICAS compelled a decision in its favor, this misstates the function of the Blackwelder analysis. The fact that the district court conceded that there may be some harm to TPI does not undermine its conclusion regarding the balance of harms. Similarly, with respect to the harm to Hart, the district court appropriately evaluated both the geographical and temporal breadth of the covenants in concluding that the balance of harms tipped neither way.

8

Having found the balancing test inconclusive, the district court proceeded to the second step of Blackwelder, analyzing whether TPI was likely to succeed on the merits. This step entails an analysis of whether the covenants not to compete were likely to be enforceable. If the covenants were enforceable, TPI would be likely to succeed on the merits of its breach of covenants claim. The district court, however, found that there were serious doubts about the enforceability of the covenants not to compete, both because it was unclear whether new consideration was given to support them and because of the covenants' breadth.

Conflicting claims were presented as to consideration. On the one hand, Hart contended that the change of positions accompanying the 2008 Agreement was a mere formality that followed on the dissolution and merger into TPI of a former subsidiary for which Hart had been working. Hart argued that no change in pay or substantive responsibilities occurred. On the other hand, TPI maintained that its subsidiary was never merged into TPI and that Hart was given new responsibilities, although it acknowledged that his compensation was not increased. Given the reasonable ground for doubt, we cannot conclude that the district court's finding was clearly erroneous.

As to the breadth of the covenants, TPI argues the district court erred in failing to exercise North Carolina's "blue

9

pencil" rule to strike the offending portions and then enforce the remainder. North Carolina's "blue pencil" rule, however, is narrow and its employment by the courts is discretionary.[3] When the language of a non-compete agreement is overly broad, "North Carolina's 'blue pencil' rule severely limits what the court may do to alter the covenant. A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable." Hartman, 450 S.E.2d at 920; see also Whittaker Gen. Medical Corp. v. Daniel, 379 S.E.2d 824, 828 (N.C. 2001). The court may not otherwise revise or rewrite the covenant.

One need only attempt to apply the blue pencil rule to the covenants at issue to demonstrate how unworkable such an option would have been. For example, had the district court been willing to strike the time limitations, the action would have voided the covenants because there would have been no time constraints and the court would not have been free to substitute a period it found acceptable. Similarly, no amount of blue penciling could have addressed the breadth or ambiguity of the terms "conflicting organizations" or "business substantially

---

[3]The language in Hartman v. Odell, 450 S.E.2d 912 (N.C. Ct. App. 1994) regarding a court's decision of whether or not to "blue line" ( "may do," "may choose") indicates that an overly broad covenant is subject to an abuse of discretion standard. TPI agrees. See Appellant Br. at 20-21.

similar." Any attempt to do so would simply eliminate the reference to any organization for which Hart could not work.[4] Consequently, TPI has provided no basis for assigning error to the district court's decision not to blue pencil the covenants not to compete, and the court properly exercised its discretion in this regard. Further, since the court's doubt about TPI's likelihood of success on the merits is amply supported by the record, there was no error in the court's finding on this issue.

With respect to the third step of the <u>Blackwelder</u> analysis, the district court found that the public interest weighed against granting a preliminary injunction. The court concluded that in sharply disputed cases like this, the public interest is best served if the parties are subject to the normal litigation process. In light of the court's earlier findings on the balance of harm and the probability of success on the merits, this determination of the public interest was not in error. Just as it is a matter of public interest to enforce valid non-compete agreements, similarly it is a matter of public interest to see that non-compete agreements that are likely invalid do

---

[4]TPI's argument about blue penciling also seems to neglect the context of the district court's ruling, i.e., a determination of TPI's <u>likelihood of succeeding</u> on the merits. Since the court was not actually determining the validity of the covenants on the merits, the employment of blue penciling by the district court to try to ensure their validity would not have been appropriate.

11

not receive the extraordinary relief of a preliminary injunction. Since the district court employed the proper legal standards and its factual findings were not clearly erroneous, the district court did not abuse its discretion in denying TPI's motion for a preliminary injunction on the basis of the breach of covenants claim.

B. Trade secrets

In determining whether to grant a preliminary injunction on the basis of TPI's trade secrets claim, the first step in the district court's <u>Blackwelder</u> analysis encompassed the second.[5] In balancing the harms, the court found, as we have noted, that much of what TPI was claiming as trade secrets probably already had been, or was required to be, disclosed to AMICAS under the APA, and that this voluntary transfer significantly mitigated any potential harm to TPI. Although TPI argues that there could be no harm to Hart in not disclosing the trade secrets, this argument ignores the fact that the injunctive relief TPI seeks would prevent Hart from working for AMICAS. The district court's analysis in this regard was not erroneous.

---

[5]Also, to a considerable extent, the district court's <u>Blackwelder</u> analysis of TPI's trade secrets claim was embedded within its analysis of TPI's breach of covenants claim.

12

In balancing the competing harms, the district court was also considering the likelihood of TPI's success. By finding that "there's a significant possibility that Technology Partners was required by the terms of [the APA] to transfer substantial chunks of what they now claim are trade secrets over to somebody that paid them," the district court was simultaneously finding that TPI had not made a showing that it would likely succeed on its trade secrets claim. At oral argument, TPI maintained that the district court had impermissibly muddled the steps of the Blackwelder analysis. However, while Blackwelder held that if the plaintiff could show irreparable harm then the plaintiff did not need also show likelihood of success on the merits, Blackwelder did not hold that the consideration of the two steps must be strictly segregated. Indeed, Blackwelder recognized that the steps of the analysis are frequently intertwined. 550 F.2d at 196. Since TPI failed to make the showing of irreparable harm, the district court here needed to proceed to the second step but it was under no obligation to rigidly compartmentalize its analysis of the two. The district court's finding that the first two steps of the Blackwelder analysis weighed against granting TPI injunctive relief on the basis of its trade secrets claim was not in error.

The third step of the district court's analysis – the determination of the public interest – is identical for both TPI's claims and has been articulated above.

III.

Because the district court did not abuse its discretion in denying TPI's motion for a preliminary injunction, the district court's order is

AFFIRMED.