An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e     P r o c e d u r e .

NO. COA13-1417

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

CUT N UP HAIR SALON OF CAROLINA
BEACH, LLC, and KIMBERLY A. LEWIS,
        Plaintiffs,

        v.                                          New Hanover County
                                                    No. 12 CVS 3023
STEPHANIE BENNETT and JODA
BENNETT,
        Defendants.

        Appeal by Defendants from Order entered 23 August 2013 by

Judge W. Allen Cobb, Jr., in New Hanover County Superior Court.

Heard in the Court of Appeals 4 June 2014.


        *Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady
        Richardson, Jr., for Plaintiffs.*

        *Broadwell Phillips & Potter, PLLC, by J. Hunter Broadwell,
        for Defendants.*


        STEPHENS, Judge.


                *Factual Background and Procedural History*

        This case arises from the operation of a home-based

hairstyling salon by Defendants Stephanie Bennett ("Ms.

Bennett") and Joda Bennett ("Mr. Bennett") in Carolina Beach,

North Carolina. Before opening the home-based salon, Ms. Bennett owned and operated a beauty salon under the trade name "Cut N Up." On 17 May 2010, Ms. Bennett sold Cut N Up to Plaintiff Kimberly A. Lewis for $20,000.

Ms. Bennett is a licensed cosmetologist. She does not have a high school diploma or a college degree. Lewis has an undergraduate degree in business administration. The purchase agreement was prepared by Lewis, who downloaded a template from the internet and made various handwritten changes. In pertinent part, the signed agreement provided that Ms. Bennett (1) would not engage in a competitive business for a period of five years and within a fifty-mile radius of Cut N Up, and (2) would not make known the names and addresses of the Cut N Up customers or solicit those customers for a competitive business (the "restrictive covenants" or the "non-compete provisions"). No handwritten changes were made to this section of the agreement.

For approximately two years following the sale, Ms. Bennett remained at Cut N Up as an independent cosmetologist. She was paid by the customers and rented salon space from Lewis. Pursuant to the purchase agreement, which stipulated that Ms. Bennett had "1 yr. of pre-paid [b]ooth rent," her rent for the

first year was paid out of the total purchase price for the salon. Afterward, Ms. Bennett paid the rent herself.

On 30 April 2012, Lewis decided not to renew Ms. Bennett's rental contract and asked Ms. Bennett to leave the salon. In an attempt to avoid litigation, Lewis then offered to reduce the geographic limitation in the restrictive covenant from fifty miles to twenty miles in exchange for certain commitments by Ms. Bennett. Ms. Bennett declined that offer and, in May, began practicing cosmetology from her home with the help of Mr. Bennett. Ms. Bennett's home is located approximately two miles from Cut N Up Hair Salon.

On 1 August 2012, Plaintiffs Lewis and Cut N Up Hair Salon of Carolina Beach, LLC ("Cut N Up"), filed suit against Defendants, seeking compensatory damages, punitive damages, costs and expenses, attorneys' fees, and an injunction. On 13 August 2012, the trial court, Judge Paul L. Jones presiding, issued a temporary restraining order enjoining Defendants from operating the home-based salon. Approximately one month later, on 18 September 2012, the trial court, Judge Gary E. Trawick presiding, entered a consent order. The order memorialized the parties' agreement, without prejudice to either party, and

stated that Defendants would be permitted to continue operating the home-based salon subject to certain restrictions.

Plaintiffs sought to dissolve the consent order one year later, on 6 August 2013. By order filed 23 August 2013, the trial court, Judge W. Allen Cobb, Jr., presiding, granted Plaintiffs' motion, dissolved the consent order, and permanently enjoined Defendants from operating the home-based salon until the restrictive covenants were set to expire on 17 May 2015. By separate order filed that same day, the trial court granted Plaintiffs' motions for attorneys' fees, costs, and sanctions in the amount of $13,660.60. On 10 September 2013, Defendants filed notice of appeal from the trial court's order, seeking review only "of the provisions of the [o]rder imposing a permanent injunction against Defendants."

## *Discussion*

On appeal, Defendants argue that the trial court erred in granting partial summary judgment to Plaintiffs and imposing a permanent injunction on Defendants because (1) the restrictive covenants are unenforceable as a matter of law or, in the alternative, (2) the case involves disputed issues of material fact. We disagree.

### *I. Appellate Jurisdiction*

As Defendants acknowledge in their notice of appeal, this case is interlocutory in nature. *See Liggett Grp., Inc. v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993) ("A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal.") (citations omitted). Therefore, Defendants have no immediate right of appeal. *Id.* ("Such prohibition promotes judicial economy by preventing fragmentary appeals.") (citation omitted).

> Nonetheless, in two instances a party is permitted to appeal interlocutory orders: *first*, where there has been a final determination of at least one claim, and the trial court certifies that there is no just reason to delay the appeal [under] Rule 54(b); and *second*, if delaying the appeal would prejudice a "substantial right." As the court below made no certification, the first avenue of appeal is closed.
>
> Regarding the second, it has been frequently noted the substantial right test is much more easily stated than applied. There are a few general principles governing what constitutes a "substantial right" and[,] thus[,] it is usually necessary to consider the particular facts of each case and the procedural context in which the interlocutory decree was entered. [Generally speaking, a] substantial right . . . is considered affected if there are overlapping factual issues between the claim determined and any claims which have not yet been determined because such overlap creates the potential for inconsistent verdicts

> resulting from two trials on the same factual issues.

*Id.* at 23-24, 437 S.E.2d at 677 (citations and certain internal quotation marks omitted; emphasis in original).

This Court has previously recognized that an injunction affecting a person's livelihood involves a substantial right and, therefore, justifies immediate appellate review. *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 147 N.C. App. 463, 466-67, 556 S.E.2d 331, 334 (2001) (citations omitted). We have also held that an order enjoining one party from competing in violation of a non-competition agreement affects a substantial right. *QSP, Inc. v. Hair*, 152 N.C. App. 174, 176, 566 S.E.2d 851, 852 (2002). Ms. Bennett's ability to continue operating the home-based salon clearly affects her livelihood. Moreover, the trial court's order granting Plaintiffs' motion for partial summary judgment was issued pursuant to the non-compete agreement. Accordingly, we agree with Defendants that the trial court's order affects a substantial right and, therefore, proceed to immediate appellate review of this issue.

*II. Standard of Review*

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and

that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and internal quotation marks omitted; italics added). Review is based only on the pleadings and evidence before the trial court. *Liggett Grp., Inc.*, 113 N.C. App. at 25, 437 S.E.2d at 678 (citations omitted). "The burden of establishing a lack of any triable issue of fact resides with [Plaintiffs] as movant[s] and[,] thus[,] all evidence must be viewed in the light most favorable to [Defendants]." *Id.* (citation omitted).

*III. The Restrictive Covenants*

Defendants argue that the restrictive covenants are unenforceable as a matter of law because they exceed Plaintiffs' legitimate business interests with regard to (1) the restrained activity and (2) the geographic limitation on that activity. As a result, Defendants assert, the trial court erred by enjoining them from operating the home-based salon. We disagree.

Restrictive covenants may be enforced against a former owner or a former employee. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 649, 370 S.E.2d 375, 380 (1988).

> Whether the covenantor is a former owner or a former employee, intimate knowledge of the business operations or personal association with customers provides an opportunity to either the former employee or the former owner to injure the business of the

> covenantee. A non-competition agreement, therefore, is a device used by the covenantee to prevent the covenantor from utilizing this opportunity to do injury.

*Id.* (citations omitted). Accordingly, our Supreme Court has stated that a non-competition covenant is valid and enforceable when it is "(1) in writing; (2) reasonable as to terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." *Triangle Leasing Co. v. McMahon*, 327 N.C. 224, 228, 393 S.E.2d 854, 857 (1990) (citations omitted).

> [A] further consideration by [our appellate courts], in recognizing the validity of these covenants, is that at the time of entering these contracts containing covenants not to compete both parties apparently regarded the restrictions as reasonable and desirable. Essentially, by enforcing the restrictions a court is only requiring the defendants to do what they agreed to do. While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect *legitimate interests*. It is as much a matter of public concern to see that valid covenants are observed as it is to frustrate the oppressive ones.

*United Labs., Inc.*, 322 N.C. at 649, 370 S.E.2d at 380 (citations, internal quotation marks, and brackets omitted; emphasis added). What constitutes a "legitimate interest" is a question of law for the court. *See Kadis v. Britt*, 224 N.C. 154,

158, 29 S.E.2d 543, 545 (1944) ("Since the determinative question is one of public policy, the reasonableness and validity of the contract is a question for the court and not for the jury, to be determined from the contract itself and admitted or proven facts relevant to the decision.") (citation omitted).

*A. Restrained Activity*

Defendants aver that the restrictive covenants exceed Plaintiffs' legitimate business interests with regard to the restrained activity (*i.e.*, engaging in business competitive with Cut N Up) because (1) section 15.01 is overbroad and (2) section 15.02 places "unrestricted and undefined" limitations on Ms. Bennett. Alternatively, Defendants argue that summary judgment is not proper because there is a disputed issue of material fact as to this issue. We disagree.

*i. Section 15.01*

Section 15.01 of the purchase agreement provides as follows:

> The Seller expressly agrees that for a period of five years following the execution of this Agreement, _____ [*he or she*] will not, directly or indirectly, as an employee, agent, proprietor, partner, stockholder, officer, director, or otherwise, render any services to, or on _____ [*his or her*] own behalf engage in or own a part or all of any business which is the same as, similar to, or competitive

with the Business, which is being sold to Buyer, anywhere within a 50 mile radius from the current location of the Business that is being sold without prior written consent of the Buyer.

Defendants contend that this section exceeds Plaintiffs' legitimate business interests due to overbreadth because it purports to prohibit Ms. Bennett from "'rendering any services' to another business regardless of the form or type of such services." Citing *Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 450 S.E.2d 912 (1994), Defendants assert that the "all-encompassing language [of section 15.01] restricts activity wholly unrelated to cosmetology" and produces oppressive results. We disagree.

"A covenant must be no wider in scope than is necessary to protect the business of the employer. If a contract by an employee in restraint of competition is too broad to be a reasonable protection to the employer's business it will not be enforced." *Id.* at 316, 450 S.E.2d at 919 (citations and internal quotation marks omitted). In *Hartman*, the parties agreed that the plaintiff was precluded "from working with any actuarial business in North Carolina (or seven other states), even if the business by which he was engaged did not service any customers located in the eight states." *Id.* at 316–17, 450 S.E.2d at 919.

Importantly, "the covenant was not limited so as to prevent [the] plaintiff's competition for [the] defendant's customers *only in the applicable territory*." *Id.* at 317, 450 S.E.2d at 919 (internal quotation marks omitted; emphasis added). In addition, (1) the covenant could be read to prohibit the plaintiff from working for *any business* that provided actuarial services, (2) the covenant required the plaintiff to have no association whatsoever with any business that provided actuarial services, and (3) no legitimate business interest supported a worldwide restriction on competition of this sort. *See id.* at 317, 450 S.E.2d at 919-20. Accordingly, we determined that the covenant was overly broad and unenforceable. *Id.* at 317, 450 S.E.2d at 920.

Here, unlike the covenant *Hartman*, section 15.01 only works to prevent competition between Ms. Bennett and Cut N Up in the applicable territory, a fifty-mile radius of "the current location of [Cut N Up]." By its terms, the covenant allows Ms. Bennett to continue working as a cosmetologist anywhere, and for any business, *outside of this radius*. Therefore, *Hartman* is not applicable, and the covenant is not overly broad. Defendants' argument is overruled.

*ii. Section 15.02*

Section 15.02 of the purchase agreement provides as follows:

> The Seller shall not for a period of five years immediately following the execution of this Agreement, regardless of any reasons or cause, either directly or indirectly:
>
> (a) make known to any person, firm[,] or corporation the names and addresses of any of the customers of the Seller or Buyer or any other information pertaining to them; or
>
> (b) call on, solicit, or take away, or attempt to call on, solicit, or take away any of the customers of the Seller on whom the Seller called or with whom _____ [*he or she*] became acquainted during ownership of this Business either for Seller or for any other person, firm[,] or corporation.

Citing *Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 670 S.E.2d 321 (2009), Defendants contend that this section exceeds Plaintiffs' legitimate business interests because (1) it does not define the term "customer" or (2) it "would operate to prevent M[s]. Bennett from reaching out to friends and former clients" if the term "customer" is considered to mean "all patrons of the salon." Defendants assert that "[n]o legitimate business interest justifies preventing M[s]. Bennett from soliciting or calling upon friends and clients developed over the course of 20 years . . . 'regardless of reason or cause.'" We are unpersuaded.

> To be valid, the restrictions [in a covenant not to compete] must be no wider in scope than is necessary to protect the business of the employer. In North Carolina, the protection of customer relations against misappropriation by a departing employee is well recognized as a legitimate interest of an employer. Additionally, a covenant is reasonably necessary for the protection of a legitimate business interest if the nature of the employment is such as will bring the employee in personal contact with patrons or customers of the employer, or enable [her] to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers.

*Id.* at 656, 670 S.E.2d at 327 (citations, internal quotation marks, and brackets omitted).

In *Ridgway*, we determined that certain restrictive covenants were not enforceable (1) when the covenants "would prevent [the defendant] from working in any business within a 60-mile radius of Raleigh that competes with [the plaintiff], or any of its divisions, subsidiaries, affiliates, predecessors, or assignees, even if [the defendant's] employment duties for [the plaintiff] had nothing to do with that business" and (2) when the covenants prevented the defendant

> not only from engaging in business with current or former clients of [the plaintiff] with whom he developed a relationship, but also prohibit[ed] him from soliciting the business of any [client of the plaintiff], which as defined by the agreement,

> includ[ed] clients of any of [the plaintiff's] affiliates or divisions outside the medical staffing business with whom [the defendant] would not have had any contact.

*Id.* at 657, 670 S.E.2d at 328. The undefined term in that case was the list of the plaintiff's "affiliated companies that engage in business distinct from the medical staffing business in which [the defendant] had been employed." *Id.* There was no evidence that these companies engaged in the same business as the plaintiff. *Id.* Therefore, we held, the plaintiff had no legitimate business interest in preventing such solicitation, and the covenants were not enforceable. *Id.*

Here, unlike *Ridgway*, section 15.02 limits Ms. Bennett's ability to solicit "customers of Seller," *i.e.*, customers of Ms. Bennett, "either for Seller or for any other person, firm[,] or corporation." In the context of this case, the meaning of "customer of Seller" is clear; it cannot refer to anyone other than the individuals Ms. Bennett serviced while she owned Cut N Up, *i.e.*, the individuals serviced "during ownership of [the b]usiness." These customers, obviously, have a direct connection to the vitality and success of the Cut N Up business. Unlike the customers in *Ridgway*, these individuals are not defined broadly to include customers of an entirely different business or set of businesses. Indeed, section 15.02 makes no statement that Ms.

Bennett is barred from soliciting *cosmetology customers* in general or customers from some other type of business. Rather, Ms. Bennett is barred from soliciting the customers of Cut N Up Hair Salon "on whom [she] called or with whom [she] became acquainted during ownership of [Cut N Up]." This limitation is necessary to protect Cut N Up's business.

Furthermore, we note that, despite Defendants' contention to the contrary, section 15.02 does not prevent Ms. Bennett from "reaching out to friends and former clients" in a noncommercial capacity. The language of the covenant is that the Seller, Ms. Bennett, may not — regardless of any reasons or cause — "call on," "solicit," or attempt to call on, solicit, or "take away any of the customers of the Seller" *for herself or some other entity*. The straightforward implication from these words, "for herself," is that Ms. Bennett is barred from contacting customers for some commercial purpose, not that she is barred from "reaching out." Accordingly, we conclude that section 15.02 is not wider in scope than necessary to protect the legitimate business interests of Cut N Up. *Ridgway* is unavailing, and Defendants' argument is overruled.

> *B. Geographic Scope*

Defendants next contend that the covenants are unenforceable pursuant to our opinion in *Beasley v. Banks*, 90 N.C. App. 458, 368 S.E.2d 885 (1988), because the fifty-mile restriction on competition is more extensive in geographic scope than is reasonably necessary to protect Plaintiffs' business interests. For support, Defendants point out that (1) the restriction was drafted pursuant to a generic form and (2) Lewis had previously offered to reduce the restriction, in the context of her settlement offer to amend the agreement and avoid litigation, to twenty miles. We are unpersuaded.

"The territory excluded from competition by an agreement such as this one must be no greater than is reasonably necessary to protect the covenantee's business interest, and if it is unreasonably extensive the entire covenant fails since equity will neither enforce nor reform an overreaching and unreasonable agreement." *Id.* at 460, 368 S.E.2d at 886 (citations omitted). Generally speaking, a restriction as to territory is reasonable when the plaintiff is engaged in business within that area. *Safety Equip. Sales & Serv., Inc. v. Williams*, 22 N.C. App. 410, 414, 206 S.E.2d 745, 748 (1974) (concluding that the 150-mile-radius contained in the parties' restrictive covenant was enforceable as not unreasonable when the plaintiff was "engaged

in business in an area encompassing a 175[-]mile radius of Wilmington"). This Court has also identified the following six factors to consider when determining the reasonableness of the geographic scope of a covenant not to compete:

> (1) the area or scope of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

*Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 281, 530 S.E.2d 878, 882 (2000) (citation omitted).

In *Beasley*, a restrictive covenant prevented the defendant optometrist from dispensing eyeglasses within a radius of thirty miles of the town of Havelock for five years after he vacated the plaintiff optician's premises. 90 N.C. App. at 459, 368 S.E.2d at 886. The defendant violated that provision, and the plaintiff brought suit. *Id.* On appeal, we held that the thirty-mile restriction was not reasonable because the parties' affidavits showed that

> (1) the area excluded from competition by the covenant includes Jacksonville, Atlantic Beach, Atlantic, Oriental, Emerald Isle, Harker's Island, Vanceboro, Ocracoke, Aurora, Arapahoe, Marshallberg, and Cove City, and (2) [the] plaintiff has no established pool of customers in any of

-18-

> those places. For [the p]laintiff's
> affidavit states that during the three years
> the parties occupied adjoining offices he
> referred to [the] defendant all his
> customers who needed to have their eyes
> tested and glasses prescribed; and [the]
> defendant's affidavit states that of the
> hundreds of customers [the] plaintiff
> referred to him *not one resided in any of
> the places named above*, all of which are in
> the area excluded from competition by the
> covenant and several of which are quite
> populous. These forecasts of proof, standing
> alone, are sufficient to establish that
> [the] plaintiff had no pool of customers in
> any of the places listed that he had a legal
> right to protect and that obligating [the]
> defendant not to sell eyeglasses in those
> places was unnecessary for the protection of
> [the] plaintiff's business.

*Id.* at 460, 368 S.E.2d at 886 (emphasis added). The Court also noted that, on summary judgment, the plaintiff's mere statement that "his customers [were] resid[ing] throughout the thirty[-]mile radius area and beyond," without specific facts to support that statement, was insufficient to establish the reasonableness of the geographic area proscribed by the covenant. *Id.* at 460-61, 368 S.E.2d at 887 (internal quotation marks omitted). Accordingly, we vacated the trial court's order granting summary judgment in favor of the plaintiff and remanded the case to the trial court for entry of judgment dismissing the action. *Id.* at 461, 368 S.E.2d at 887.

Cut N Up is located at 913 North Lake Park Boulevard in Carolina Beach, North Carolina. During Lewis's deposition, she testified as follows regarding the basis for the fifty-mile restriction:

Q. Do you know where the town of Delco is located?

A. No.

Q. Never been to Delco?

A. No.

Q. All right. Have you ever heard of Delco?

A. No.

Q. . . . [I]f I tell you that Delco is within 50 miles of Carolina Beach, do you believe that Ms. Bennett opening a competing salon in Delco would tend to impact your business?

A. Yes.

Q. Okay. And why do you say that?

A. Because I know from the clients that we have, there are people that drive to the salon that are 20, 30, 40, 50 miles from there and they come to our salon, they've been coming to our salon for 10, 15 years.

. . .

Q. And tell me why this 50-mile figure is the significant number. Why . . . did you chose 50 miles? Why is that the number that defines your business interest?

A. It seemed to me to be, for a period of five years while I established base with my clients, the best buffer zone for [Ms. Bennett] not to compete with me.

Ms. Bennett did not discuss where the Cut N Up customers lived in relation to the fifty-mile restriction. She referenced a customer address book on a number of occasions, but later stated that the book did not actually include the customers' addresses. This statement is consistent with the copy of "Stephanie's Client List," submitted by Plaintiffs with their motion for partial summary judgment, which includes only names and phone numbers for Ms. Bennett's customers, not addresses. Unlike the defendant in *Beasley*, Ms. Bennett offered no evidence that the Cut N Up customer base was, in its entirety, within an area smaller than the fifty-mile radius proscribed by section 15.01.

Therefore, unlike *Beasley*, we are presented in this case with a forecast of evidence in which Plaintiffs attest that "there are people that drive to the salon that are 20, 30, 40, 50 miles from there and . . . , they've been coming to our salon for 10, 15 years." Defendants, on the contrary, offer no evidence on that issue. In *Beasley*, the plaintiff's general statement that he had a pool of customers in the entire area covered by the covenants was insufficient to support summary

judgment because the defendant had offered evidence to the contrary. 90 N.C. App. at 460-61, 368 S.E.2d at 886. Here, however, Defendants offer no evidence that Cut N Up's customer base fails to include the entire area encompassed by the fifty-mile restriction. Therefore, the undisputed evidence is that Cut N Up's customer base covered the full area described in the restrictive covenants. As a result, the parties' forecast of evidence indicates that Cut N Up was engaged in business in the area proscribed by the restrictive covenants. The geographic limitation is, therefore, reasonable, and Defendants' argument is overruled. *See Williams*, 22 N.C. App. at 414, 206 S.E.2d at 745.

*IV. Genuine Issue of Material Fact*

Alternatively, Defendants argue that partial summary judgment is not proper because the facts of this case present a genuine issue of material fact. Again, we disagree.

Defendants present no evidence that there is an issue of material fact. Instead, Defendants contend that the parties share differing views of the meaning of certain terms in the agreement and attempt to characterize those differences as an issue of fact. This is incorrect. The meaning of the terms of a

contract is an issue of law, not fact. *See, e.g.*, *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000) ("Here, the issue is a matter of contract interpretation, and hence, a question of law."). Accordingly, Defendants' argument is overruled, and the trial court's order granting partial summary judgment is affirmed.[1]

AFFIRMED.

Judges STROUD and MCCULLOUGH concur.

Report per Rule 30(e).

---

[1] Because we affirm the trial court's order granting partial summary judgment, we need not address Plaintiffs' alternative argument that Defendants are estopped from asserting that the restrictive covenants are unenforceable.