Box Co. of Am. v. Bostick, 2025 NCBC 75.

STATE OF NORTH CAROLINA

ALAMANCE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV003154-000

BOX COMPANY OF AMERICA,
LLC (formerly CorTek, Inc.),

        Plaintiff,

v.

WILLIAM V. BOSTICK,

        Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

**THIS MATTER** is before the Court on Defendant William V. Bostick's ("Bostick") Motion to Dismiss ("Motion to Dismiss," ECF No. 11).

**THE COURT**, having considered the Motion to Dismiss, the briefs of the parties, the arguments of counsel, and all appropriate matters of record, **CONCLUDES** that the Motion should be **GRANTED** as set forth below.

*Law Offices of Matthew K. Rogers, PLLC, by Matthew K. Rogers, for Plaintiff.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Lindsey S. Barber and Jennifer K. Van Zant, for Defendant.*

Davis, Judge.

## INTRODUCTION

1. In connection with the present Motion to Dismiss, the Court must address a dispute between an employer and its former employee involving the enforceability of a non-competition agreement and a claim that the employee misappropriated the employer's trade secrets.

## FACTUAL AND PROCEDURAL BACKGROUND

2.     The Court does not make findings of fact in connection with a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the complaint (and in documents attached to, referred to, or incorporated by reference in the complaint) that are relevant to the Court's determination of the motion.  *See, e.g.*, *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

3.     Plaintiff Box Company of America, LLC ("Box") is a North Carolina limited liability company that maintains its principal place of business in Alamance County, North Carolina.  (Compl. ¶ 1, ECF No. 3.)  Box is a manufacturer of corrugated packaging solutions used for shipping purposes for mostly regional customers.  (Compl. ¶ 4.)

4.     Defendant Bostick is a resident of Richmond County, North Carolina, and a former employee of Box.  (Compl. ¶ 2, 26–28.)

5.      Prior to Bostick's employment with Box, he worked as one of two salespersons at CorTek, Inc. ("CorTek"), a company located in Richmond County, North Carolina.  (Compl. ¶¶ 6–7, 10.)

6.     As a condition of his employment with CorTek, Bostick signed a non-competition agreement dated 29 January 2010 (the "Non-Competition Agreement").  (Compl. ¶ 6; *see* Ex. 1, ECF No. 3.1.)  Under the terms of the Non-Competition Agreement, Bostick was restricted from working for a competitor of CorTek for a two-year period following the termination of his employment.  (Ex. 1 ¶ 1.)

7. The Complaint alleges that in addition to Bostick's obligations under the Non-Competition Agreement, Bostick also agreed to "keep CorTek's confidential business information confidential." (Compl. ¶ 9.)

8. During his employment at CorTek over nearly thirteen years, Bostick gained experience in all aspects of the corrugated packaging business, developed customer relationships and goodwill, and learned the buying practices of CorTek's customers. (Compl. ¶¶ 13, 17.)

9. In or around June 2022, CorTek and Box entered into discussions regarding the proposed purchase of CorTek by Box. (Compl. ¶ 18.) During these discussions, Bostick allegedly "told Box[] representatives . . . that he intended to continue working for the business if Box[] purchased it, and that he wanted to be an important part of continuing and growing the business." (Compl. ¶ 22.)

10. On or about 10 February 2023, Box and CorTek executed an Asset Purchase Agreement ("APA"). (Compl. ¶ 24.)

11. Pursuant to Section 2.2(k) of the APA, Bostick's Non-Competition Agreement was assigned to Box. (Compl. ¶ 24.)

12. The Complaint further alleges that Box also acquired all of CorTek's confidential information and customer goodwill. (Compl. ¶ 25.)

13. Following the execution of the APA, Box employed Bostick under the same terms and conditions that applied to his CorTek employment. (Compl. ¶ 26.) Bostick thereafter worked as Box's key sales employee, gaining access to Box's confidential information and both developing and maintaining customer

relationships. (Compl. ¶ 27.)

14. On or about 16 February 2024—just over one year after Box acquired CorTek—Bostick resigned from his employment with Box. (Compl. ¶ 28.) At that time, Bostick allegedly told a Box representative that he intended to comply with his Non-Competition Agreement. (Compl. ¶ 28.)

15. Shortly thereafter, however, Bostick obtained new employment with Opus Packaging Group ("Opus")—a competitor of Box. (Compl. ¶ 29.)

16. After Bostick informed Opus of his Non-Competition Agreement, Opus's Chief Human Resources Officer, Debra Doyle, engaged in discussions with Gary Harris, one of Box's managers, regarding that subject. (Compl. ¶¶ 30–31.) During these discussions, both Opus and Bostick represented to Harris that Bostick had neither shared any of Box's confidential information nor solicited any of Box's or CorTek's customers. (Compl. ¶ 31.)

17. Based on Doyle's stated willingness to acknowledge these representations in writing, Harris sent a confirmation letter to Doyle and Bostick on or about 11 June 2024 and requested their signatures on it. (Compl. ¶¶ 32–33; *see* Ex. 3 ("Confirmation Letter"), ECF No. 3.3.)

18. However, neither Doyle nor Bostick ever signed the Confirmation Letter. (Compl. ¶¶ 34–35.) Instead, approximately one month later, Doyle informed Harris that Opus was not willing to enter into an agreement with Box. (Compl. ¶ 34.)

19. On or about 3 February 2025, Box became aware of Bostick soliciting customers with whom he had worked during his employment with Box. (Compl. ¶ 37.)

20.     Approximately one month later, Box acquired photographs of Opus products on the premises of one of Bostick's former customers from his employment with Box.  (Compl. ¶ 38.)

21.     On 4 June 2025, Box initiated the present lawsuit by filing a Complaint in Alamance County Superior Court.  In its Complaint, Box asserted claims for breach of contract, quantum meruit/implied contract, fraud, misappropriation of trade secrets, and unfair and deceptive trade practices ("UDTP").

22.     This matter was subsequently designated as a mandatory complex business case and assigned to the undersigned on 1 July 2025.  (ECF Nos. 1–2.)

23.     On 1 August 2025, Bostick filed the present Motion to Dismiss.

24.     The Court held a hearing on the Motion to Dismiss on 21 November 2025 at which all parties were represented by counsel.

25.     The Motion to Dismiss has been fully briefed and is now ripe for resolution.

**LEGAL STANDARD**

26.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017).  The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987).  The Court accepts all well-pled factual allegations in the relevant pleading as true.  *See*

*Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is not, however, required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

27. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (cleaned up). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (cleaned up).

28. Our Supreme Court has observed that "[i]t is well established that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (cleaned up).

## ANALYSIS

29.   In his Motion to Dismiss, Bostick seeks dismissal of all claims contained in the Complaint.  The Court will address each of Bostick's arguments in turn.

## I.   Breach of Contract

30.   "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.  The elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Davis v. Woods*, 286 N.C. App. 547, 561 (2022) (cleaned up).

31.   Although Box's Complaint is not a model of clarity, it appears to allege a breach of two express contracts: (1) the Non-Competition Agreement and (2) a confidentiality agreement.

### A.   Non-Competition Agreement

32.   This Court has held that "when an asset purchase agreement is executed that purports to transfer a former employer's rights under a restrictive covenant to a new employer, the prescribed period contained within the covenant begins to run from the date of the execution of the agreement." *MarketPlace 4 Ins., LLC v. Vaughn*, 2023 NCBC LEXIS 31, at *15 (N.C. Super. Ct. Feb. 24, 2023); *see also Covenant Equip. Corp. v. Forklift Pro, Inc.*, 2008 NCBC LEXIS 12, at *24–25 (N.C. Super. Ct. May 1, 2008) ("[T]he buyer of a noncompetition agreement does not step fully into the shoes of the original employer because the buyer is a new employer. Instead, the buyer can either enforce the noncompetition agreement or enter into a new noncompetition agreement.").

33.     Bostick argues that the Non-Competition Agreement is unreasonably broad so as to render it unenforceable.  Section 1 states as follows:

> Employee hereby covenants and agrees that during his employment with CorTek and for a period of two years after termination of said employment, Employee will not *own any interest in*, manage, *be employed by*, or operate a business engaged in corrugated plastic packaging, corrugated paper packaging, contract packaging, or foam packaging within a 300 mile radius of CorTek located at 12 E. V. Hogan Drive, Hamlet, Richmond County, North Carolina.

(Ex. 1 ¶ 1 (emphasis added).)[1]

34.     Bostick contends that the language contained in Section 1 effectively "prevents Bostick from having any association with a business in the same general industry as CorTek (and Box[]) that has any connection with North Carolina and the surrounding states, regardless of Bostick's connection to that company." (Def.'s Mem. Law Supp. Mot. Dismiss, at 6, ECF No. 12.)

35.     The Court agrees that the restrictions contained in Section 1 of the Non-Competition Agreement are unenforceable.

36.     First, North Carolina courts have held that provisions in non-competition agreements entirely restricting one's ability to be employed in *any* capacity in a business relating to a particular industry are impermissibly broad.  In *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307 (1994), our Court of Appeals considered the enforceability of a non-competition provision contained in the plaintiff's employment agreement. *Id.* at 307.

37.     In holding that the non-competition provision was too broad to be

---

[1] Although Box appears to be arguing that Section 1 of the Non-Competition Agreement also contains a non-solicitation provision, no such provision is actually contained therein.

enforceable, the Court of Appeals stated the following:

> Article 13(a) is . . . overly broad in that, rather than attempting to prevent plaintiff from competing for actuarial business, it requires plaintiff to have no association whatsoever with any business that provides actuarial services. Article 13(a) provides that plaintiff may not "own, manage, lease, control, operate, participate, consult, or assist" any "entity" that provides "actuarial services." Such a covenant would appear to prevent plaintiff from working as a custodian for any "entity" which provides "actuarial services."

*Id.* at 317; *see also Andy-Oxy Co. v. Harris*, 2019 N.C. App. LEXIS 902, at *9–10 (N.C. Ct. App. Nov. 5, 2019) (unpublished) ("[W]hen a covenant restricts competitive employment, we have held the non-compete covenant's language to be overly broad when it would preclude a departed employee from having any association with a business providing similar services, including performing even wholly unrelated work." (cleaned up)).

38.     Second, North Carolina courts have made clear that provisions in non-competition agreements entirely restricting an employee's ability to own an interest in any business of a certain industry are likewise unenforceable. For example, in *VisionAIR, Inc. v. James*, 167 N.C. App. 504 (2004), the plaintiff appealed the trial court's denial of its motion for a preliminary injunction, asserting—among other grounds—that it was likely to succeed on the merits of its claim that the defendant, a former employee of the plaintiff, had violated the non-competition covenant of his employment agreement. *Id.* at 505–06.

39.     The Court of Appeals concluded that the covenant was unenforceable.

> Here, the non-compete covenant in the Employment Agreement is overbroad and therefore not enforceable. Notably, the covenant states that James may not "own, manage, be employed by or otherwise

participate in, directly or indirectly, any business similar to Employer's . . . within the Southeast" for two years after the termination of his employ with VisionAIR. . . . [B]y preventing James from even "indirectly" owning any similar firm, James may, for example, even be prohibited from holding interest in a mutual fund invested in part in a firm engaged in business similar to VisionAIR. Such vast restrictions on James cannot be enforced.

*Id*. at 508–09 (cleaned up).

40. In response, Box makes two arguments.

41. First, it claims that parol evidence will show that the parties' mutual understanding as to the meaning of Section 1 of the Non-Competition Agreement was far more limited in nature and was only intended to prevent Bostick from obtaining a similar employment position with a direct competitor within 300 miles of Box's physical location.

42. However, North Carolina law is clear that extrinsic evidence can be considered by a court in construing a contract *only* when the contract is ambiguous. *See Walter v. Walter*, 279 N.C. App. 61, 70 (2021) ("Where terms of an agreement are ambiguous, the trial court may consider parol evidence to explain the agreement[.]"); *see also Register v. White*, 358 N.C. 691, 695 (2004) ("An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." (cleaned up)).

43. Here, the Court finds nothing ambiguous about the language set out in Section 1 of the Non-Competition Agreement. Indeed, Box does not appear to even be arguing that Section 1, as worded, is actually ambiguous. Therefore, parol evidence on this issue would not be admissible.

44.     Second, Box asks that the Court "blue pencil" the Non-Competition Agreement so as to delete any provision that it finds to be unenforceable. The "blue pencil" rule permits North Carolina courts to "take notice of the divisions the parties themselves have made [in a covenant not to compete], and enforce the restrictions in the territorial divisions deemed reasonable and refuse to enforce them in the divisions deemed unreasonable." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 699 (2016) (cleaned up).

45.     Case law from our appellate courts makes clear, however, that the blue pencil rule does not allow the Court to simply *rewrite* an otherwise unenforceable non-competition agreement. *See id.* ("[W]hen an agreement not to compete is found to be unreasonable, we have held that the court is powerless unilaterally to amend the terms of the contract." (cleaned up)); *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 528 (1989) ("The courts will not rewrite a contract if it is too broad but will simply not enforce it." (cleaned up)).

46.     Such an impermissible use of the blue pencil rule is exactly what Box seeks here. The "terms" of the Non-Competition Agreement that Box asks the Court to enforce are materially different than those actually contained in the document itself. As a result, application of the blue pencil rule in this manner would go well beyond the Court's authority.

47.     Therefore, Box's breach of contract claim based on the Non-Competition Agreement is hereby **DISMISSED with prejudice**.

**B.      Confidentiality Agreement**

48.      Box also asserts that Bostick is in breach of a contract to keep its proprietary information confidential.

49.      Box has not alleged any written confidentiality agreement existing between it and Bostick (or, for that matter, between CorTek and Bostick).  Moreover, at the 21 November 2025 hearing, counsel for Box conceded that he is not aware of the existence of any such document.

50.      Although a confidentiality agreement can, in theory, be enforceable even if it is not reduced to writing, Box has failed to adequately allege the existence of such an agreement.  Although no heightened standard exists for pleading a breach of contract claim, the nature of the contract and the circumstances in which it was created must be pled with enough specificity for a defendant to understand what it has been alleged of breaching.  *See Dunn Holdings I, Inc. v. Confluent Health LLC*, 2018 NCBC LEXIS 215, at *15–16 (N.C. Super. Ct. Dec. 10, 2018) ("[T]he Defendants have alleged the existence of a valid contract between [the parties] . . . and specific conduct which allegedly breached the confidentiality provision in the contract[.] . . . The allegations give Plaintiffs sufficient notice of the events or transactions which produced the claim [and] enable [Plaintiffs] to understand the nature of it and the basis for it, [and] to file a responsive pleading[.]" (cleaned up)).

51.      That has not occurred here, however, as the Complaint is essentially silent regarding the formation of the alleged agreement and its terms.  Among other things, it is unclear whether Box is seeking to enforce a confidentiality agreement

between itself and Bostick or between CorTek and Bostick. Moreover, the Complaint lacks clarity as to how or when that agreement was formed or the terms to which the parties agreed. As such, dismissal of this claim is proper. *See*, *e.g.*, *Trail Creek Invs. LLC v. Warren Oil Holding Co.*, 2023 NCBC LEXIS 70, at \*43 (N.C. Super. Ct. May 9, 2023) ("Here, although the claim alleges the existence of confidentiality agreements entered into by Sanderson, the Amended Complaint is essentially devoid of any details of the alleged breach. As such, it fails to satisfy even the low bar of notice pleading.").[2]

52. Therefore, Box's breach of contract claim based on the alleged confidentiality agreement is hereby **DISMISSED without prejudice**.[3]

## II. Breach of Implied Covenant of Good Faith and Fair Dealing

53. "It is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 40 N.C. App. 743, 746 (1979). To that end, "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 245 N.C. App. 378, 385 (2016)

---

[2] In its response brief, Box repeatedly suggests that the legal requirements typically imposed under North Carolina law on employers seeking to enforce employment agreements should be relaxed when the employer is a small business. However, Box has failed to cite any case so holding, and the Court is unaware of any such rule in North Carolina.

[3] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).

(cleaned up).

54. As this Court has previously observed, "North Carolina state court decisions considering good faith and fair dealing claims that are 'part and parcel' of breach of contract claims . . . have concluded that the two claims merely stand or fall together." *Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at *23 (N.C. Super. Ct. Aug. 20, 2019) (cleaned up); *see Innovare, Ltd. v. Sciteck Diagnostics, Inc.*, 2023 NCBC LEXIS 8, at *30 (N.C. Super. Ct. Jan. 19, 2023) ("Where a breach of contract claim survives dismissal, we have previously declined to dismiss a claim for breach of the implied covenant of good faith and fair dealing." (cleaned up)).

55. Here, since the Court has dismissed Box's express breach of contract claims, dismissal of the accompanying claim for breach of the implied covenant of good faith and fair dealing is also appropriate. *See Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38–39 (2018) (holding that "the invalidity of [the plaintiff's] breach of contract claim is . . . fatal to his claim for breach of the implied covenant of good faith and fair dealing" where its basis was "identical to the basis for his breach of contract claim"); *Eye Dialogue LLC v. Party Reflections, Inc.*, 2020 NCBC LEXIS 90, at *20–21 (N.C. Super. Ct. July 28, 2020) (dismissing breach of contract claim and then also dismissing claim for breach of the implied covenant of good faith and fair dealing to the extent the latter was "supported by the same factual underpinnings").

56. Therefore, Box's claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED without prejudice**.

### III. Breach of Implied Contract

57. Box has also asserted a claim against Bostick based on a theory of implied contract. North Carolina law recognizes two types of implied contracts—an implied-in-fact contract and an implied-in-law contract.

58. As this Court has stated:

> Preliminarily, the Court notes for clarification purposes that Plaintiff's breach of implied contract claim appears to assert a claim for breach of contract "implied in fact," as opposed to a claim for breach of contract "implied in law." "[A] contract implied in fact arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998). "Such an implied contract is as valid and enforceable as an express contract," and "[e]xcept for the method of proving the fact of mutual assent, there is no difference in the legal effect of express contracts and contracts implied in fact." *Id.* at 526–27, 495 S.E.2d at 911. In contrast, a contract implied *in law*—or "quasi contract"—can arise only where there is no actual agreement between the parties, and the court instead "implies" a contract to permit recovery in "quantum meruit" "'for the reasonable value of services rendered in order to prevent unjust enrichment.'" *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414–15 (1998) (quoting *Potter v. Homestead Preservation Ass'n*, 330 N.C. 569, 578, 412 S.E.2d 1, 7 (1992)).

*Sparrow Sys., Inc. v. Priv. Diagnostic Clinic, PLLC*, 2014 NCBC LEXIS 70, at \*20–21 (N.C. Super. Ct. Dec. 24, 2014).

59. Nevertheless, "it is a well established principle that an express contract precludes an implied contract with reference to the same matter." *Horack v. S. Real Est. Co. of Charlotte*, 150 N.C. App. 305, 311 (2002) (cleaned up); *see Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at \*19 (N.C. Super. Ct. Oct. 21, 2016) ("[O]ur case law clearly holds that an express contract precludes an implied contract with reference to the same matter." (cleaned up)).

60.     Here, Box has failed to adequately allege any implied-in-fact contract existing between it and Bostick.  Once again, its allegations are simply too vague to state a valid claim.  *See, e.g., Edwards v. PFA Architects, P.A.*, 2017 NCBC LEXIS 56, at *11 (N.C. Super. Ct. June 29, 2017) (dismissing with prejudice a claim for breach of implied contract where "the Complaint merely alleges that there was an implied contract between the stockholders" and this allegation simply amounted to "a legal conclusion not entitled to a presumption of validity" (cleaned up)); *Keister v. Nat'l Council of the YMCA of the U.S.*, 2013 NCBC LEXIS 32, at *22–23 (N.C. Super. Ct. July 18, 2013) (dismissing a claim for breach of implied-in-fact contract where "Plaintiffs have alleged no acceptance or consideration for Y-USA's offer sufficient to imply mutual assent to the terms of any alleged agreement").

61.     Nor does the Complaint set forth a valid claim for quantum meruit on the theory that a contract implied-in-law existed.

62.     Under North Carolina law, "[t]o recover in quantum meruit, [a] plaintiff must show (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Scott v. United Carolina Bank*, 130 N.C. App. 426, 429 (1998) (cleaned up).  "Quantum meruit claims require a showing that both parties understood that services were rendered with the expectation of payment." *Id.* (cleaned up).

63.     Once again, even taking the allegations in the Complaint in the light most favorable to Box, there are no specific allegations that Box rendered services to Bostick that were accepted by him and for which payment was expected.  *See, e.g.,*

*Krawiec,* 370 N.C. at 615 (affirming dismissal of an unjust enrichment claim based on implied-in-law contract where no allegations existed of a benefit conferred upon the defendants by the plaintiffs).

64.     Therefore, Box's claim for breach of implied contract is **DISMISSED without prejudice**.

## IV.     Misappropriation of Trade Secrets

65.     North Carolina's Trade Secrets Protection Act ("NCTSPA") provides that "[t]he owner of a trade secret shall have [a] remedy by civil action for misappropriation of his trade secret."  N.C.G.S. § 66-153.

66.     The NCTSPA defines a "trade secret" as:

[B]usiness or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a.     Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b.     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3).

67.     The NCTSPA defines "misappropriation" as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret."  § 66-152(1).

68. Even if a protectable trade secret has been alleged, "trade secret protection can be lost if adequate measures were not taken to [e]nsure that the information was, in fact, kept [secret]." *Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, 2015 NCBC LEXIS 40, at *27 (N.C. Super. Ct. Apr. 23, 2015).

69. Here, Box's allegations are deficient in at least two respects.

70. First, the complaint merely makes a conclusory allegation that Box took reasonable measures to protect its trade secrets. North Carolina case law makes clear that a plaintiff asserting a claim for misappropriation of trade secrets under the NCTSPA must allege what reasonable protection measures were taken by the plaintiff to protect its alleged trade secret information. *See Thortex, Inc. v. Standard Dyes, Inc.*, 2006 N.C. App. LEXIS 1171, at *10 (N.C. Ct. App. June 6, 2006) (unpublished) ("Without any allegation of reasonable efforts to maintain secrecy, the mere assertion that [the information] [was] kept confidential is not enough to withstand a 12(b)(6) motion to dismiss."); *McKee v. James*, 2013 NCBC LEXIS 33, at *38–39 (N.C. Super. Ct. July 24, 2013) (granting a Rule 12(b)(6) motion to dismiss where "Plaintiffs failed to allege any facts tending to demonstrate that Plaintiffs implemented reasonable efforts to protect the secrecy of the construction methods").

71. Second, Box has failed to adequately allege how Bostick actually misappropriated any such trade secrets. Instead, Box simply alleges that Bostick "must have" used its trade secrets because it obtained photos of Opus's products seen on the premises of one of Box's customers and because it became aware of Bostick calling on its customers in February 2025.

72. These allegations are insufficient to allege the misappropriation element of this claim. *See Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 327 (2008) (affirming trial court's dismissal under 12(b)(6) of misappropriation of trade secrets counterclaims where the allegations did "not identify with sufficient specificity either the trade secrets Plaintiffs allegedly misappropriated or the acts by which the alleged misappropriations were accomplished"); *Bite Busters, LLC v. Burris*, 2021 NCBC LEXIS 26, at \*22 (N.C. Super. Ct. Mar. 25, 2021) ("Despite satisfying its burden to sufficiently plead its customer list trade secret, however, Bite Busters's trade secret claim nonetheless fails because the Company has failed to allege the acts by which the alleged misappropriations were accomplished." (cleaned up)); *Strata Solar, LLC v. Naftel*, 2020 NCBC LEXIS 129, at \*11–12 (N.C. Super. Ct. Oct. 29, 2020) (dismissing trade secret misappropriation claim because Plaintiff failed to "allege any specific acts . . . to show that [the defendants] accessed, disclosed, or used Plaintiff's trade secrets without Plaintiff's authorization[,]" and "[t]he Court [was] not required to accept Plaintiff's conclusory allegations regarding [the defendants'] alleged misappropriation of Plaintiff's trade secrets").

73. Therefore, Box's claim for misappropriation of trade secrets is hereby **DISMISSED with prejudice**.

## V.     Fraud.

74. To state a valid claim for fraud, a plaintiff must allege "(1) [a] false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage

to the injured party." *Ward v. Fogel*, 237 N.C. App. 570, 581 (2014) (cleaned up).

75. "Claims of fraud are held to a heightened pleading standard pursuant to Rule 9(b) of the North Carolina Rules of Civil Procedure." *Julian v. Wells Fargo Bank, N.A.*, 2012 NCBC LEXIS 32, at *19–20 (N.C. Super. Ct. May 22, 2012). The particularity requirement of Rule 9(b) "is met by alleging [the] time, place and content of the fraudulent representation, [the] identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85 (1981). "An alleged misrepresentation must be 'definite and specific.'" *Value Health Sols., Inc. v. Pharm. Rsch. Assocs.*, 385 N.C. 250, 263 (2023) (cleaned up). If a fraud claim is premised on a promissory representation, "facts must be alleged from which a court and jury may reasonably infer that the defendant did not intend to carry out such representations when they were made." *Whitley v. O'Neal*, 5 N.C. App. 136, 139 (1969) (cleaned up).

76. In a nutshell, Box contends that Bostick's repeated representations that he intended to remain with the company fraudulently induced Box to (1) purchase the assets of CorTek; (2) offer Bostick employment; and (3) continue training him in the corrugated packaging industry. Box further alleges that Bostick never intended to remain employed by Box or fulfill any alleged obligations he owed.

77. The bulk of Box's assertions in its Complaint in support of its fraud claim do not comply with Rule 9(b) because they fail to allege when the alleged misrepresentations at issue were specifically made. The only exception is the allegation that "[o]n February 16, 2024, Bostick specifically represented to [Box] that

Bostick was aware of the Non-Compete and that Bostick intended to fully comply [with] the Non-Compete, and that Bostick would not disclose Box[']s confidential information and would keep, maintain and not use Box[']s confidential information." (Compl. ¶ 58.)

78. However, North Carolina courts have long held that such allegedly unfulfilled promises of future intent are typically not actionable on a theory of fraud. *See Williams v. Williams*, 220 N.C. 806, 810 (1942) ("It is generally held, and is the law in this State, that mere unfulfilled promises cannot be made the basis for an action of fraud." (cleaned up)); *see also Hale v. MacLeod*, 294 N.C. App. 318, 330 (2024) (affirming trial court's dismissal of fraud claim "[b]ecause our appellate courts require claims of fraud to be based on particularly alleged existing facts, not merely on future prospects or unfulfilled promises").[4]

79. Therefore, Box's fraud claim is hereby **DISMISSED with prejudice**.

## VI. UDTP

80. To establish a prima facie claim for UDTP, a plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Gen. Fid. Ins. v. WFT, Inc.*, 269 N.C. App. 181, 191 (2020) (cleaned up).

81. Here, Box's UDTP claim fails for several reasons.

82. First, in this Opinion, the Court has dismissed those claims that would

---

[4] Furthermore, allowing a fraud claim to go forward based on the above-referenced 16 February 2024 representation would be somewhat odd given that this Court has now held that the Non-Competition Agreement was unenforceable and that Box has failed to allege the existence of an actual confidentiality agreement between the parties.

otherwise serve as a valid predicate for a UDTP claim as a matter of law—that is, the fraud and misappropriation of trade secrets claims. *See Bhatti v. Buckland*, 328 N.C. 240, 243 (1991) ("The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred."); *Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 236 (2013) ("This Court has held that violations of [the NCTSPA] may also violate [the Unfair and Deceptive Trade Practices Act]." (cleaned up)).

83.     Second, our appellate courts have made clear that disputes between an employer and its employee (including disputes based on an alleged breach of a non-competition agreement) do not typically give rise to UDTP liability. *See Kinesis Advert., Inc. v. Hill*, 187 N.C. App. 1, 21 (2007) (holding that "the employer/employee relationship does not fall within the intended scope and purpose of" a UDTP claim (cleaned up)); *Am. Marble Corp. v. Crawford*, 84 N.C. App. 86, 88 (1987) (holding that the defendant's UDTP counterclaim regarding a non-competition covenant "lies outside the scope of G.S. § 75-1.1").

84.     Nor has the Court's careful review of Box's Complaint revealed any other valid basis for its UDTP claim.

85.     Therefore, Box's UDTP claim is hereby **DISMISSED with prejudice**.

## CONCLUSION

**THEREFORE**, the Court hereby **ORDERS** as follows:

a.     The Motion to Dismiss is **GRANTED** with respect to all claims as follows:

i. Box's claim for breach of contract is **DISMISSED with prejudice** to the extent said claim is based upon a breach of the Non-Competition Agreement and is **DISMISSED without prejudice** to the extent said claim is based upon the breach of an alleged confidentiality agreement;

ii. Box's claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED without prejudice**;

iii. Box's claim for breach of implied contract is **DISMISSED without prejudice**;

iv. Box's claim for misappropriation of trade secrets is **DISMISSED with prejudice**;

v. Box's claim for fraud is **DISMISSED with prejudice**; and

vi. Box's UDTP claim is **DISMISSED with prejudice**.

b. Box shall have 14 days from the date of this Opinion in which to file an amended complaint repleading those claims that the Court has dismissed herein without prejudice.

**SO ORDERED**, this the 15th day of December 2025.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases