Matt Logan, Inc. v. Abitz, 2026 NCBC 54.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

MATT LOGAN, INC. d/b/a TMRW WEALTH,

Plaintiff,

v.

BENJAMIN ABITZ,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV025485-400

**ORDER AND OPINION ON
DEFENDANT'S PARTIAL MOTION TO
DISMISS FIRST AMENDED
VERIFIED COMPLAINT**

1.      **THIS MATTER** is before the Court on the 26 March 2026 filing of *Defendant's Partial Motion to Dismiss First Amended Verified Complaint* (the Motion).  (ECF No. 27 [Mot.].)  Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the Rule(s)), Defendant seeks dismissal of Plaintiff Matt Logan, Inc. d/b/a TMRW Wealth's (Plaintiff or Logan Inc.) claims alleged against him for (1) breach of the employment agreement, in part; (2) misappropriation of trade secrets; (3) unfair competition and unfair and deceptive trade practices; and (4) injunctive relief.  (Mot. 1.)

2.      For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

> *Carruthers & Roth, P.A. by Robert Young and Craig Almond, for Plaintiff Matt Logan, Inc. d/b/a TMRW Wealth.*
>
> *Bell, Davis & Pitt, P.A. by Marc E. Gustafson and Carson L. Pace, for Defendant Benjamin Abitz.*

Robinson, Chief Judge.

## I.    INTRODUCTION

3.    This action arises from the departure of Defendant from his employment with Plaintiff.  Plaintiff contends that Defendant breached the non-solicitation, non-compete, and nondisclosure provisions of his employment agreement; misappropriated Plaintiff's trade secrets; and participated in unfair and deceptive trade practices in an effort to poach Plaintiff's clients.

## II.    FACTUAL BACKGROUND

4.    The Court does not make findings of fact when ruling on a motion to dismiss pursuant to Rule 12(b)(6) and only recites those factual allegations relevant and necessary to the Court's determination of the Motion.

### A.    The Parties

5.    Plaintiff is a North Carolina corporation with its principal place of business in Guilford County, North Carolina.  (First Am. Verified Compl. & Mot. TRO, Prelim. & Permanent Inj. ¶ 1, ECF No. 4 [Am. Compl.].)

6.    Defendant Benjamin Abitz (Defendant or Abitz) is a citizen and resident of Greensboro, North Carolina and was formerly employed by Plaintiff.  (Am. Compl. ¶¶ 2, 5.)

### B.    Defendant's Employment and the Employment Agreement

7.    Plaintiff provides long-term, individualized financial and brokerage advice to select clients from its office in Greensboro, North Carolina.  (Am. Compl. ¶ 3.)

8.    Abitz is a certified financial planner and a registered representative with the Financial Industry Regulatory Authority.  (Am. Compl. ¶ 4.)

9. Abitz became employed by Plaintiff on 1 October 2020 as a Financial Planner. (Am. Compl. Ex. A, at 1 [Employment Agreement].) On or about 4 November 2020, Abitz entered into an employment agreement with Plaintiff (the Employment Agreement). (Am. Compl. ¶ 5.) In consideration of his execution of the Employment Agreement, Abitz received a check for two hundred and fifty dollars. (Am. Compl. ¶ 7.)

10. The Employment Agreement contains, in relevant part, a series of restrictive covenants, including provisions on non-competition, non-solicitation, and confidentiality. (Am. Compl. ¶¶ 11–13.)

### 1. Non-Competition Provision

11. Section 6 of the Employment Agreement provides:

(iv) During his employment with the Company and for a full year after termination of his employment with the Company, the Employee will not for himself or any other entity perform any services in competition with or provide any information in competition with the Company either from a location within Guilford County, North Carolina or for any person or entity located in Guilford County, North Carolina.

(Employment Agreement § 6(b)(iv).)

### 2. Non-Solicitation Provision

12. Section 6 of the Employment Agreement also provides:

(iii) During his employment with the Company and for a full year after termination of his employment with the Company, the Employee will not induce or attempt to induce or assist any other person or entity to induce or attempt to induce, either directly or indirectly, any person or persons to discontinue doing business with the Company (whether or not such person would commit a breach of contract).

(Employment Agreement § 6(b)(iii).)

## 3. Confidentiality Provisions

13.     Pursuant to the Employment Agreement:

(i)     During his employment, and at all times thereafter, the Employee will not use for his own benefit or disclose to any person, firm, or corporation (except as may be required by law or expressly authorized by the Company) the following information of the Company: financial information; strategic plans; operational policies; profit structure; marketing techniques of the Company; financial or any personal information of Company clients or prospective clients with who Employee has dealt; or any other proprietary information, trade secrets, financial information, or any other confidential information or material relating to the Company, its services, its clients, or the operation of its business, or any similar information which has been obtained by the Employee during the Employee's employment by the Company.

(Employment Agreement § 6(b)(i).)

14.     The Employment Agreement defines trade secrets and confidential information to include "any information relating to the Company, its finances, its shareholders, its clients, its suppliers, its industry practices, know-how, processes, decisions, and any other information of whatever nature which gives to the Company an opportunity to obtain an advantage over its competitors[.]"     (Employment Agreement § 6(b)(i).)

## C.     Securities and Financial Advisory Firm

15.     Prior to 6 October 2025, Plaintiff offered securities to its clients through Cetera Wealth Services, LLC and offered financial advisory services to its clients through Cetera Investment Advisers LLC (together with Cetera Wealth Services, LLC, Cetera).  (Am. Compl. ¶ 14.)

16. In spring 2025, with Defendant's support and encouragement, Plaintiff reevaluated its affiliation with Cetera and decided to affiliate with a new securities and financial advisory firm, known as Kestra. (Am. Compl. ¶ 15.)

17. Over the next several months, Plaintiff began planning its transition from Cetera to Kestra, which was projected to take place sometime in October 2025. Defendant participated in several attorney-client meetings regarding this transition in which he was privy to certain confidential business information. (Am. Compl. ¶¶ 16, 18, 28.)

**D. Events Giving Rise to Litigation**

18. In May 2025, Defendant organized Abax Capital, LLC (Abax), a North Carolina limited liability company, located in Greensboro, North Carolina. (Am. Compl. ¶ 19.) Defendant represented to Plaintiff that Abax would serve as an entity for Defendant to receive shared revenue from Plaintiff after the transition from Cetera to Kestra. (Am. Compl. ¶ 20.) Plaintiff contends that Defendant actually registered Abax with Cetera so he could separate from Plaintiff and accept reassignment of Plaintiff's clients during Plaintiff's transition to Kestra. (*See* Am. Compl. ¶ 30.)

19. On 6 October 2025, the day before the transition was to occur, Defendant resigned from his employment with Plaintiff. (Am. Compl. ¶ 21; Am. Compl. Ex. C [Resignation Letter].)

20. Plaintiff's transition plan provided that Plaintiff's client accounts would remain with Cetera for a period of time while Plaintiff's securities licenses were

processed by Kestra. (Am. Compl. ¶ 27.) Plaintiff alleges that on 7 October 2025 around 8 AM, an hour before Plaintiff informed Cetera that it would be transitioning its securities and financial services to another provider, an email was sent to Defendant approving licensing updates so Defendant could accept reassignment of Plaintiff's client accounts from Cetera during the transition period. (Am. Compl. ¶¶ 25, 29.)

21. On the day of the transition, Plaintiff alleges that Defendant began contacting Plaintiff's clients, informing them that Plaintiff had left Cetera, and leaving the clients under the impression that Plaintiff was no longer offering financial advisory services. (Am. Compl. ¶¶ 31–33.)

22. Three days later, Defendant sent an email, on behalf of Abax, to Plaintiff's clients stating "Matt Logan has opted to leave Cetera and join another firm. After thoughtful consideration, we have made the decision to remain with Cetera[.]" (Am. Compl. ¶¶ 34–36; Am. Compl. Ex. D [Oct. 10 Email].) Plaintiff alleges that since 6 October 2025, Defendant has solicited and continues to solicit Plaintiff's clients. (Am. Compl. ¶ 39.) As a result, several of Plaintiff's clients have contacted Plaintiff to inform it of Defendant's attempts to solicit their business. (Am. Compl. ¶ 47.)

23. Plaintiff further alleges that prior to Defendant's resignation, Defendant deleted and/or copied certain documents and confidential information, including the Employment Agreement, from Plaintiff's server. (Am. Compl. ¶¶ 23–24.)

24. Following Defendant's resignation, Plaintiff also alleges that Defendant accessed Plaintiff's tax analysis software and eMoney Advisor accounts to identify

confidential client information. (Am. Compl. ¶¶ 42–43.) Specifically, Plaintiff alleges that Defendant deleted or removed certain clients from Plaintiff's eMoney Advisor account during the transition period. (Am. Compl. ¶¶ 44–45.)

25. On 17 October 2025, Plaintiff sent a letter to Defendant requesting that Defendant cease and desist his actions that were in breach of the Employment Agreement. (Am. Compl. ¶ 48; Am. Compl. Ex. E [First Cease-and-Desist Letter].) Following Defendant's receipt of the letter, Plaintiff alleges that Defendant continued to solicit Plaintiff's clients and compete with Plaintiff. (Am. Compl. ¶ 50.)

26. As a result, Plaintiff sent a second letter on 23 October 2025, requesting that Defendant immediately cease and desist soliciting customers and competing with Plaintiff. (Am. Compl. ¶ 51; Am. Compl. Ex. F [Second Cease-and-Desist Letter].) The next day, Plaintiff was reassured by Defendant's counsel that Abitz would no longer solicit Plaintiff's clients. (Am. Compl. ¶ 53.) However, a few days later, Defendant continued to text and call Plaintiff's clients to encourage them to discontinue working with Plaintiff. (Am. Compl. ¶¶ 54–56; Am. Compl. Ex. G.)

## III. PROCEDURAL BACKGROUND

27. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

28. On 4 November 2025, Plaintiff initiated this action upon the filing of the *Verified Complaint and Motion for Temporary Restraining Order, Preliminary and Permanent Injunction.* (ECF No. 3.)

29. On 7 November 2025, the Superior Court issued the *Temporary Restraining Order* restricting Defendant from inducing or attempting to induce any person from discontinuing doing business with Plaintiff.  (ECF No. 6.)

30. Following entry of the *Temporary Restraining Order*, the Superior Court entered the *Order Granting Preliminary Injunction* on 21 January 2026 restricting Defendant from soliciting Plaintiff's clients or competing with Plaintiff until 7 November 2026 or until entry of a final judgment.[1]  (ECF No. 16.)

31. Thereafter, on 23 February 2026, Plaintiff filed the *First Amended Verified Complaint and Motion for Temporary Restraining Order, Preliminary and Permanent Injunction* (the *Amended Complaint*), (ECF No. 4), with consent from Defendant.  (*See* ECF No. 19.)

32. Following the filing of the *Amended Complaint*, the case was designated to the Business Court and assigned to the undersigned.  (ECF Nos. 1–2.)

33. On 26 March 2026, Defendant filed the Motion.  Following full briefing, the Court held a hearing on the Motion on 27 May 2026 (the Hearing), at which all parties were represented by counsel.  (*See* ECF No. 35.)

34. The Motion is ripe for resolution.

---

[1] However, the Court notes that even though the Superior Court filed the *Order Granting Preliminary Injunction,* it was not effective until the "filing and the posting of a bond in the amount of two hundred thousand dollars ($200,000.000)[.]"  (Order Granting Prelim. Inj. 6.) Plaintiff has made clear that "Plaintiff has not posted bond in the amount of $200,000 . . . . Further, Plaintiff represents to Defendant and this Court that it does not intend to post bond in the amount of $200,000 in the future to give effect to the Order."  (Pl.'s Br. Resp. Briefing Order Entered Mar. 10, 2026 at 10, ECF No. 26.)  As a result, even though the Superior Court concluded that Plaintiff was entitled to preliminary injunctive relief, none has ever become effective.

## IV. LEGAL STANDARD

35. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987) (citation omitted). The Court accepts all well-pleaded factual allegations in the relevant pleadings as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is, therefore, not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (citation modified).

36. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.*

37. Our Supreme Court has observed that "[i]t is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses

some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citations omitted). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (citations omitted).

## V. ANALYSIS

38. Defendant moves to dismiss the following claims Plaintiff alleges against him: (1) breach of the Employment Agreement, in part, to the extent it relates to the non-competition and non-solicitation provisions, (Am. Compl. ¶¶ 59–66), (Count One); (2) misappropriation of trade secrets in violation of N.C.G.S. § 66-152, *et seq.*, (Am. Compl. ¶¶ 72–80), (Count Three); (3) unfair competition and unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1, *et seq.*, (Am. Compl. ¶¶ 81–88), (Count Four); and (4) temporary restraining order, preliminary and permanent injunction, (Am. Compl. ¶¶ 89–95), (Count Five). The Court will address each claim in turn.

### A. Count One: Breach of the Employment Agreement

39. Plaintiff brings Count One for breach of the Employment Agreement, alleging that Defendant breached the non-competition, non-solicitation, and nondisclosure provisions of the Employment Agreement. (Am. Compl. ¶¶ 62–65.)

40. Defendant moves to dismiss Count One as it relates to the non-competition and non-solicitation provisions but does not move to dismiss the claim for breach of

the Employment Agreement's nondisclosure provision. (Def.'s Br. Supp. Partial Mot. Dismiss First Am. Ver. Compl. 4, ECF No. 28 [Def.'s Br. Supp.].)

41. To properly plead a breach of contract claim, the claimant must allege "(1) [the] existence of a valid contract and (2) [a] breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000) (citing *Jackson v. Carolina Hardwood Co.*, 120 N.C. App. 870, 871 (1995)). Where each of these elements are alleged, "it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Woolard v. Davenport*, 166 N.C. App. 129, 134 (2004) (citation omitted). "[S]tating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *11 (N.C. Super. Ct. June 19, 2019).

42. However, under North Carolina law, "[c]ovenants not to compete restrain trade and are scrutinized strictly." *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 323 (2008) (citation omitted).

43. "[F]or a non-competition agreement to be valid and enforceable it must be: '(1) in writing; (2) part of an employment contract; (3) based on valuable consideration; (4) reasonable as to time and territory; and (5) designed to protect a legitimate business interest.' " *Aeroflow Inc. v. Arias*, 2011 NCBC LEXIS 21, at *16 (N.C. Super. Ct. July 5, 2011) (quoting *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655 (2009)). "Legitimate business interests include, *inter ali*a, protecting the goodwill that arises from the former employee's contacts with customers and safeguarding the confidential information to which the former employee had access." *Prometheus Grp. Enters., LLC v. Gibson*, 2023 NCBC LEXIS

42, at *12 (N.C. Super. Ct. Mar. 21, 2023) (citing *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 652–53 (1988)).

44.     "When considering the enforceability of a covenant not to compete, a court examines the reasonableness of its time and geographic restrictions, balancing the substantial right of the employee to work with that of the employer to protect its legitimate business interests." *Med. Staffing Network*, 194 N.C. App. at 655 (citation omitted).

45.     "The reasonableness of a restraining covenant is a matter of law for the court to decide." *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 663 (1968) (citation omitted).

46.     The Court analyzes the provisions "keeping in mind that the ultimate determination depends on whether each restraint is no more restrictive than necessary to protect the legitimate business interests implicated." *Digit. Realty Tr., Inc. v. Sprygada*, 2022 NCBC LEXIS 71, at *24 (N.C. Super. Ct. July 1, 2022) (citation omitted).

47.     In evaluating geographic limitations, courts generally consider six primary factors:

> (1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

*Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 312 (1994) (citation omitted).

48. In any event, "[a] restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers." *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 42 N.C. App. 515, 523 (1979).

49. "Similarly, a temporal restriction on competition must be reasonable in duration." *Evergreen Builder Sols., LLC v. Taylor*, 2025 NCBC LEXIS 174, at *13 (N.C. Super. Ct. Dec. 29, 2025) (citing *Sandhills Home Care, L.L.C. v. Companion Home Care–Unimed, Inc.*, 2016 NCBC LEXIS 61, at *13–14, 18, 23 (N.C. Super. Ct. Aug. 1, 2006)).

50. Temporal and geographic restrictions in a non-compete agreement are often considered on a sliding scale, such that "[a] longer period of time is acceptable where the geographic restriction is relatively small, and *vice versa*." *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 280 (2000) (citing *Jewel Box Stores*, 272 N.C. at 665).

51. The Court will analyze the non-solicitation and non-competition provisions individually.

### 1. Non-Solicitation

52. Plaintiff alleges that Defendant breached the non-solicitation provision of the Employment Agreement by contacting several of Plaintiff's clients in an attempt to induce them to discontinue doing business with Plaintiff. (Am. Compl. ¶¶ 39, 65.)

53. Defendant argues that the claim for breach of the non-solicitation provision fails because the non-solicitation provision is facially overbroad and unenforceable. Defendant contends that the non-solicitation provision covers any person who has done business with Plaintiff, with no limitation on whether the person had any

contact with Defendant during his employment. It also seeks to prohibit conduct that might assist another "directly or indirectly" in soliciting clients. According to Defendant, non-solicitation provisions that are this expansive are generally unenforceable under North Carolina law. (Def.'s Br. Supp. 6–7.)

54. Plaintiff responds that the non-solicitation provision is not overbroad as written because, based on its plain language, it is a non-interference provision[2] rather than a non-solicitation provision. Plaintiff asserts that Section 6(b)(iii) does not prevent Defendant from soliciting any person who did business with Plaintiff and that, rather, it applies only to persons who Defendant actually induces to discontinue their business with Plaintiff. (Pl.'s Br. Resp. Def.'s Partial Mot. Dismiss First Am. Compl. 12, ECF No. 31 [Pl.'s Resp.].)

55. That argument is facially at odds with the express language of the provision itself. Not only does the non-solicitation provision attempt to prohibit solicitation that results in a break in the provider-customer relationship, but it also prohibits attempts to solicit, whether directly or indirectly.

56. Generally, "a client-based limitation cannot extend beyond contacts made during the period of the employee's employment." *Farr Assocs., Inc.*, 138 N.C. App. at 282. Thus, non-solicitation provisions are generally not valid when they extend beyond soliciting customers "with whom the employee actually had contact during his . . . employment." *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 459

---

[2] It is unclear from the briefing what a non-interference provision is or how it differs from a non-solicitation provision. The Court has not unearthed any case law analyzing a non-interference provision in the context of restrictive covenants. As such, the Court will analyze this as a non-solicitation provision.

(M.D.N.C. 2015) (citing *Farr Assocs., Inc.*, 138 N.C. App. at 282); *see also Prometheus Grp. Enters., LLC*, 2023 NCBC LEXIS 42, at *12 ("[Plaintiff's] failure to limit the non-solicitation provision to customers with whom [defendant] had some contact or ability to influence makes the provision impermissibly overbroad." (collecting cases)).

57. The North Carolina Supreme Court has recently determined that when "evaluating the enforceability of [non-solicitation] provisions, great weight is afforded to size and scope of the company and its affiliates where a non-solicitation provision is tied to such entities." *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting, LLC*, No. 68A25, 2026 N.C. LEXIS 493, at *42 (May 22, 2026); *see also McGriff Ins. Servs. v. Hudson*, 2023 NCBC LEXIS 4, at *30–31 (N.C. Super. Ct. Jan. 17, 2023) (determining "a provision that, read literally, would prohibit [a former employee] from soliciting a company or individual with whom he had limited contact regarding any of the business activities of [plaintiff] – even those activities that do not involve the sale of insurance products – is unreasonable in its breadth[,]" especially given the size of plaintiff and that plaintiff provides services to clients across the United States).

58. Here, the non-solicitation provision seeks to prohibit attempts by Defendant to solicit directly or indirectly anyone "doing business with the Company[.]" (Employment Agreement § 6(b)(iii).) At the hearing, Plaintiff stated, without support in the *Amended Complaint*, that a majority of its clients reside in Guilford County, it only had three financial planners during Abitz's employment, and the non-solicitation provision only restricts the solicitation of current customers of

Logan Inc. Again, this argument appears directly at odds with the express language of the agreement.

59. Based on the wording of the non-solicitation provision, and the allegations set forth in the *Amended Complaint*, the Court concludes that the non-solicitation provision is unreasonable in scope and thus unenforceable.

60. Accordingly, the Court **GRANTS** the Motion as to Count One with respect to the non-solicitation provision with prejudice.[3]

### 2. Non-Competition

61. Plaintiff also alleges that Defendant breached the non-competition provision of the Employment Agreement by performing services in competition with Plaintiff from Guilford County, North Carolina. (Am. Compl. ¶ 65.)

62. Defendant contends that the claim for breach of the non-competition provision fails because the non-competition provision is likewise facially overbroad and unenforceable. Defendant specifically argues that the Employment Agreement prohibits him from performing in *any* capacity with a competitor. Thus, Defendant asserts, the non-competition provision is unreasonable as it is not limited to prohibiting Abitz from performing the same type of work or service that he was performing for Plaintiff. (Def.'s Br. Supp. 4–6.)[4]

---

[3] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).

[4] Defendant notes that he believes the "location-based restriction is ambiguous and, therefore, unenforceable as a matter of law[,]" but provided no further argument in the briefing or at the Hearing on this issue. (Def.'s Br. Supp. 5 n.1.)

63.     Plaintiff responds that the non-competition provision is not overbroad as written because it only prohibits Defendant from providing services that are in direct competition with Plaintiff. In other words, Plaintiff contends, Defendant is only restricted from working in an identical position. (Pl.'s Resp. 10–11.)

64.     Here, the Employment Agreement restricts Abitz from "perform[ing] any services in competition with or provid[ing] any information in competition with the Company[.]" (Employment Agreement § 6(b)(iv).) The Court agrees with Defendant that this provision is overly broad. As written, the non-compete provision restricts Abitz from performing any services with a competitor, even those wholly unrelated to his previous role as a Financial Planner.

65.     Overly broad non-compete provisions fail to protect any legitimate business interest and are routinely found to be unenforceable. *See, e.g.*, *Med. Staffing Network*, 194 N.C. App. at 656 ("[R]estrictive covenants are unenforceable where they prohibit the employee from engaging in future work that is distinct from the duties actually performed by the employee."); *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508–09 (2004) (the non-compete was overly broad as defendant would be "prevented from doing even wholly unrelated work at any firm similar to [plaintiff]"); *Hartman*, 117 N.C. App. at 317 (a non-compete providing the former employee could "have no association whatsoever with any business that provides actuarial services" appeared to prevent the former employee from even working as a custodian for a company that provides actuarial services).

66. Further, Plaintiff's reliance on *Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85 (2007), is misplaced. Plaintiff argues that *Okuma* stands for the proposition that a non-competition provision is valid and enforceable when it bars the former employee from working in an identical position with a direct competitor. Although *Okuma* does provide this holding, the non-competition clause in *Okuma*, unlike the one here, contained a limiting clause restricting the defendant from taking only certain types of employment with a competitor. *See Okuma*, 181 N.C. App. at 87 (the non-competition provision prevented defendant from becoming employed or otherwise becoming commercially interested in or affiliated with a competitor, "unless [e]mployee accepts employment with a [competitor] in an area of the [competitor's] business which does not compete with the Company").

67. The Employment Agreement in this case fails to provide any type of limiting clause. Even though Defendant may not be restricted from performing in any capacity with a competitor, the restriction of providing "any services in competition" is more expansive than simply covering an identical position to the one Abitz held with Plaintiff. Plaintiff cannot get around this deficiency by now arguing that the non-competition provision only restricts Abitz from taking an identical position with a competitor. *See Washburn*, 190 N.C. App. at 323 ("Covenants not to compete . . . are scrutinized strictly." (citation omitted)).

68. Accordingly, the Court **GRANTS** the Motion as to Count One with respect to the non-competition provision with prejudice. As Defendant has not brought the

Motion against the nondisclosure provision of the Employment Agreement, Count One moves forward with respect to that provision.

### B.    Count Three: Misappropriation of Trade Secrets

69.    Plaintiff brings Count Three for misappropriation of trade secrets, alleging that Defendant "has used and continues to use Plaintiff's confidential, proprietary, [and] trade secret information[.]"  (Am. Compl. ¶ 77.)  Plaintiff also alleges that Defendant misappropriated this information "by using Plaintiff's confidential client information and Plaintiff's decision to transition from Cetera to Kestra against Plaintiff[.]" (Am. Compl. ¶ 76.)  Plaintiff further alleges that it has taken precautions to maintain the confidentiality of the alleged trade secrets by requiring its employees to enter into employment agreements prohibiting the employees from using or disclosing such confidential information.  (Am. Compl. ¶ 74.)

70.    Defendant argues that Count Three fails because Plaintiff "failed to identify any trade secret with sufficient particularity and, instead, has only made broad and conclusory allegations." (Def.'s Br. Supp. 8.)  Further, Defendant represents that he developed his own relationships with Plaintiff's clients and knowledge of those clients, in and of itself, cannot be considered a trade secret.  (Def.'s Br. Supp. 8–9.)

71.    Additionally, Defendant contends that Plaintiff has failed to identify reasonable steps taken to ensure the secrecy of the alleged trade secrets.  Specifically, defendant argues that the allegation that Plaintiff maintained the secrecy of the alleged trade secrets by having employees enter into employment agreements that contained restrictive covenants is simply not enough.  (Def.'s Br. Supp. 10–11.)

72.     Plaintiff responds that it has sufficiently pled a trade secret based not only on the confidential information protected by the Employment Agreement, but also upon the information regarding Plaintiff's decision to transition from Cetera to Kestra. (Pl.'s Resp. 14.) Further, Plaintiff contends, this Court has found that on a Rule 12(b)(6) motion, the allegation of the existence of confidentiality agreements is enough to show reasonable steps taken to protect the secrecy of alleged trade secrets. (Pl.'s Resp. 16–17.)

73.     The North Carolina Trade Secrets Protection Act (NCTSPA) defines a trade secret as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3).

74.     "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec*, 370 N.C. at 609 (quoting *Washburn*, 190 N.C. App. at 326). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly

misappropriated is insufficient to state a claim for misappropriation of trade secrets." *Washburn*, 190 N.C. App. at 327 (citation modified).

75. Here, the Court concludes that Plaintiff has failed to identify any trade secret with sufficient particularity. Plaintiff alleges its trade secrets include "certain confidential business information" regarding the transition from Cetera to Kestra, (Am. Compl. ¶¶ 18, 28), and "confidential client information," (Am. Compl. ¶¶ 42–44, 76). Plaintiff further relies on the over-encompassing language in the Employment Agreement arguing its trade secrets include "confidential information related to its shareholders, its clients, its industry practices, know-how, processes, decisions, and other information of whatever nature which gives Plaintiff an opportunity to obtain an advantage over its competitors." (Am. Compl. ¶ 73.)

76. Plaintiff argued at the Hearing that the confidential client information included financial information. However, there are no allegations in the *Amended Complaint* describing the confidential client information in any further detail. Although confidential client information and confidential business information related to the transition from Cetera to Kestra may include information that properly qualifies as a trade secret under the NCTSPA, the general allegations presented in the *Amended Complaint*, without further detail, are insufficient to put Defendant on notice of the information he is accused of misappropriating. *See Krawiec*, 370 N.C. at 611 ("In their amended complaint, plaintiffs described their trade secrets only as their 'original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information.' "

Plaintiffs provided no further detail about these ideas, concepts, strategies, and tactics sufficient to put defendants on notice as to the precise information allegedly misappropriated."); *Washburn*, 190 N.C. App. at 327 (affirming the dismissal of the misappropriation of trade secrets claim when the trade secrets were described merely as "confidential client information and confidential business information").

77.     Further, knowledge that Defendant developed during his employment with Plaintiff cannot be the subject of a claim for misappropriation of trade secrets. *See Kadis v. Britt*, 224 N.C. 154, 162 (1944) ("[T]he knowledge of a deliveryman, or other personal solicitor, of the names and addresses of his employer's customers, gained during the performance of his duties, is not a trade secret[.]"); *see also Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at *33 (N.C. Super. Ct. Oct. 15, 2015) (the names and addresses of the former employer's customers that the employee committed to memory do not constitute protectable trade secrets).

78.     The Court further concludes that Plaintiff has failed to allege misappropriation with respect to the information Defendant received about Plaintiff's transition from Cetera to Kestra. Misappropriation is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent[.]" N.C.G.S. § 66-152(1).

79.     In a recent decision, the North Carolina Supreme Court made clear that:

> [A]n employer cannot state a prima facie case against its employee merely by showing that it gave the employee access to its trade secrets at some point. Rather, an employer must show that the employee had the specific opportunity to acquire the trade secret after the employer's express or implied consent or authority ceased to exist. . . . [M]ere access to a trade secret alone is insufficient. There must also be an absence of

express or implied consent or authority at the time that the employee had a specific opportunity to acquire the trade secret.

*Rel. Ins., Inc.*, 2026 N.C. LEXIS 493, at \*29–31.

80. Here, Plaintiff has alleged Defendant attended meetings and planning sessions in which the transition from Cetera to Kestra was discussed. (*See* Am. Compl. ¶¶ 16, 18, 28.) Defendant attended these meetings with Plaintiff's consent. Thus, Defendant accessed information regarding Plaintiff's transition from Cetera to Kestra with the express consent of Plaintiff. Plaintiff has failed to allege any instance of Defendant accessing this same information after Plaintiff withdrew its consent. Thus, Plaintiff has failed to state a prima facie case of misappropriation as to the information regarding Plaintiff's transition from Cetera to Kestra.

81. Accordingly, the Court **GRANTS** the Motion as to Count Three and **DISMISSES** the claim without prejudice.[5]

C. **Count Four: Unfair Competition and Unfair and Deceptive Trade Practices**

82. Plaintiff brings Count Four for unfair competition and unfair and deceptive trade practices, alleging Defendant's "misappropriation of Plaintiff's trade secrets, concealment of material facts and misleading representations to Plaintiff's clients . . . and his unauthorized access and use of Plaintiff's accounts, software, computer networks, and other information technology systems to remove and/or copy

---

[5] This dismissal without prejudice is based on the possibility that Plaintiff can plead the alleged trade secrets with sufficient particularity and make out a prima facie case of misappropriation in a subsequent pleading, which the Court determines it has not done in the *Amended Complaint*.

confidential information belonging to Plaintiff" constitute unfair and deceptive trade practices. (Am. Compl. ¶ 83.)

83. "To prevail on a claim of unfair and deceptive trade practices[,] a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing, Inc. v. Pollard*, 101 N.C. App. 450, 460–61 (1991) (citations omitted).

84. Chapter 75 of the North Carolina General Statutes (UDTPA) provides, in pertinent part, that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a). "North Carolina courts have previously concluded that when the UDTP[A] claim rests solely upon other claims . . . which the court determines should be dismissed, the UDTP[A] claim must fail as well." *Charah, LLC v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 52, at \*19 (N.C. Super. Ct. Apr. 17, 2020) (citations omitted).

85. "Traditionally at common law, including that of North Carolina, the tort of unfair competition consisted of acts or practices by a competitor which are likely to deceive the consuming public." *Stearns v. Genrad, Inc.*, 564 F. Supp. 1309, 1320 (M.D.N.C. 1983), *aff'd*, 752 F.2d 942 (4th Cir. 1984) (citation omitted). "The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money." *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749 (1997) (citations omitted).

"Unfair competition has been found to encompass a range of behaviors 'such as trademark infringement, imitation of a competitor's product or its appearance, interference with a competitor's contractual relations, disparagement of a competitor's product or business methods, and misappropriation of a competitor's intangible property rights such as advertising devices or business systems.' " *Gateway Mgmt. Servs. v. Carrbridge Berkshire Grp., Inc.*, 2018 NCBC LEXIS 45, at *19–20 (N.C. Super. Ct. May 9, 2018) (citation modified) (quoting *Stearns*, 564 F. Supp. at 1320).

86.    "Courts have recognized that a claim for common law unfair competition is analyzed the same way as a claim for unfair or deceptive trade practices under [N.C.]G.S. § 75-1.1." *PDF Elec. & Supply Co., LLC v. Jacobsen*, 2020 NCBC LEXIS 103, at *26 (N.C. Super. Ct. Sep. 9, 2020) (collecting cases); *see also Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 57, at *20–21 (N.C. Super. Ct. June 5, 2018) ("The standard which a plaintiff must meet to recover on an unfair competition claim under the common law is not appreciably different from the standard applied to unfair and deceptive trade practices claims." (citation modified) (quoting *BellSouth Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999))).

87.    Defendant argues the UDTPA claim should be dismissed because (i) to the extent it is premised on the misappropriation of trade secrets claim, the failure of that claim is fatal to the UDTPA claim; and (ii) to the extent it is based on Defendant's

concealment of facts or alleged misrepresentations, the allegations fail to provide the specificity required under Rule 9(b). (Def.'s Br. Supp. 12–13.)[6]

88. Plaintiff responds that the misappropriation of trade secrets claim is sufficiently alleged and there are no extra requirements for a UDTPA claim that is based on fraud. (Pl.'s Resp. 18.)

89. Computer trespass may provide a sufficient basis for violation of the UDTPA. *See Evergreen Builder Sols., LLC*, 2025 NCBC LEXIS 174, at *31 (denying a motion to dismiss as there was an unchallenged computer trespass claim and the Court could not conclude that there was no set of facts supporting a UDTPA claim); *see also CRH E., LLC v. Berastain*, 2025 NCBC LEXIS 11, at *41 (N.C. Super. Ct. Feb. 4, 2025) ("[C]omputer trespass in violation of state law constitutes conduct 'which a court of equity would consider unfair' " and thus, may form the basis of a UDTPA claim. (quoting *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 400 (1978))).

90. Thus, at this stage of the litigation, construing the allegations of the *Amended Complaint* as true and considering that the claim for computer trespass is unchallenged, the Court cannot conclude "to a certainty that plaintiff is entitled to no relief under any state of facts" as to its UDTPA and common law unfair competition claim. *See Sutton v. Duke*, 277 N.C. 94, 103 (1970) (citation modified).

---

[6] Defendant conceded at the Hearing that, to the extent the UDTPA claim is based on Plaintiff's claim for computer trespass, it should remain as Defendant has not moved to dismiss that claim.

91. Therefore, the Court **DENIES** the Motion as to Count Four for unfair competition and violation of the UDTPA.

### D. Count Five: Temporary Restraining Order, Preliminary and Permanent Injunction

92. Plaintiff brings Count Five for temporary restraining order and preliminary and permanent injunction, alleging that Defendant "has contacted and continues to contact and attempt to induce Plaintiff's clients to discontinue doing business with Plaintiff, using Plaintiff's confidential information, which is a breach of the Employment Agreement" and is causing Plaintiff immediate and irreparable harm. (Am. Compl. ¶¶ 90, 92.)

93. Defendant argues that injunctions are remedies and not independent causes of action such that the claim for injunctive relief should be dismissed. (Def.'s Br. Supp. 13.)

94. Plaintiff responds that because it has already prevailed on its motions for injunctive relief prior to the filing of the *Amended Complaint*, this request for relief should not be dismissed. (Pl.'s Resp. 19.)

95. "As a matter of pleading form, the Court observes that injunctions are remedies, not independent causes of action." *States Mortg. Co. v. Bond*, 2023 NCBC LEXIS 33, at *22 (N.C. Super. Ct. Mar. 6, 2023) (citing *Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005) ("A preliminary injunction is an ancillary remedy, not an independent cause of action")). It is well-settled that "injunctive relief is not a standalone claim[.]" *Window World of St. Louis, Inc. v. Window World of*

*Bloomington, Inc.*, 2021 NCBC LEXIS 88, at *15, *36 n.12 (N.C. Super. Ct. Oct. 6, 2021).

96. Accordingly, the Court **GRANTS** the Motion as to Count Five. As injunctive relief is a form of relief not a claim, and because Plaintiff has already received the remedy sought through the *Temporary Restraining Order* and unilaterally decided not to obtain the benefits of the *Order Granting Preliminary Injunction*, the Court **DISMISSES** this "claim" without prejudice to Plaintiff's right to seek injunctive relief if warranted by the evidence at the appropriate time.

## VI. CONCLUSION

97. For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motion as follows:

    a. The Court **GRANTS** the Motion as to Count One for breach of contract to the extent it is based on the breach of the non-solicitation and non-competition provisions of the Employment Agreement, and Count One is **DISMISSED** with prejudice to that limited extent;

    b. The Court **DENIES** the Motion as to Count One for breach of contract with respect to breaches of the nondisclosure provision of the Employment Agreement;

    c. The Court **GRANTS** the Motion as to Count Three for misappropriation of trade secrets, and that claim is **DISMISSED** without prejudice;

d.    The Court **DENIES** the Motion as to Count Four for violation of the UDTPA and common law unfair competition; and

e.    The Court **GRANTS** the Motion as to Count Five for temporary restraining order and preliminary and permanent injunction, and that claim is **DISMISSED** without prejudice.

**IT IS SO ORDERED**, this the 9th day of June, 2026.


/s/ Michael L. Robinson
Michael L. Robinson
Chief Business Court Judge